George **WILLIS**, Jr., Woodrow T. Lewis, and Albert L. Dunn, Plaintiffs,

Robert F. Kennedy, Attorney General, Intervenor,

v.

The **PICKRICK RESTAURANT**, a Corporation, and Lester G. Maddox, Defendants.

**Civ. A. No. 9028.**

Untied States District Court
N. D. Georgia,
Atlanta Division.

July 22, 1964.

William H. Alexander, Atlanta, Ga., Jack Greenberg, Constance Baker Motley and Michael Meltsner, New York City, and Burke Marshall and St. John Barrett, Asst. Attys. Gen., Washington, D. C., for plaintiffs and intervenor.

Sidney T. Schell, Atlanta, Ga., and William G. McRae, Atlanta, Ga., for defendants.

Before TUTTLE, Chief Judge, Court of Appeals, and HOOPER and MORGAN, District Judges.

PER CURIAM.

This suit was filed by the three named plaintiffs, all Negroes, for themselves and for the class consisting of all other Negroes, seeking an injunction restraining the defendants from violating the provisions of the Civil Rights Act of 1964 in connection with their operation of a large restaurant in the City of Atlanta.

The United States was permitted to intervene as it is authorized to do under Section 204 of the Act, upon proper certification by the Attorney General. Its intervention was, by amendment, denominated a "complaint in intervention", and it asserted "This is a complaint filed by the United States under Section 206 (a) of the Civil Rights Act of 1964 after leave to intervene has been granted to the United States under Section 204(a) of the Civil Rights Act of 1964".

Following its intervention, the Attorney General filed the certificate required under Section 206(b) (where the Attorney General initiates the action), to the effect that in the opinion of the Attorney General "the case is of general public importance". The Attorney General also filed a request for a three-judge court, which is also provided for under Section 206(b), where a proceeding is filed by the Attorney General. Treating the complaint in intervention of the United States in the same light as if the Attorney General had filed the suit initially, the undersigned Elbert P. Tuttle, Chief Judge of the Court of Appeals for the Fifth Circuit, designated a three-judge court to hear and determine the case.

To a considerable extent this is a companion case to Heart of Atlanta Motel, Inc. v. United States of America and Robert F. Kennedy, Attorney General, D. C., 231 F.Supp. 393. While the cases were not joined for argument, the trial of this case commenced immediately following the hearing and argument in the Heart of Atlanta Motel case by the same three-judge court. All parties and the Court recognize that to a considerable degree similar questions of constitutional law were present in both cases.

The real question presented by this complaint and the Government's complaint on intervention is whether Section 201(a), (b) (2) and (c) (2) is constitutional.[1]

In substance, this section of Title II declares the right of every person to full and equal enjoyment of the goods, services and accommodations of any restaurant, cafeteria, lunchroom, etc., if it serves or offers to serve interstate travelers, or if a substantial portion of the foods it serves has moved in commerce.

---

1. "Sec. 201. (a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

"(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this title if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

"(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station; * * *

"(c) The operations of an establishment affect commerce within the meaning of this title if (2) in the case of an establishment described in paragraph (2) of subsection (b), it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which it sells, has moved in commerce; * * *."

■ As was the situation in the Heart of Atlanta Motel case, here, too, the defendants admit that they are denying members of the Negro race the right to be served in their restaurant on account of race. Unlike the other case, however, the application of the Civil Rights Act to these defendants depends upon the resolution of issues of fact, for a restaurant is not brought within the definition of interstate commerce unless it meets one of the tests enumerated in subparagraph (c) of Section 201. These tests are in the alternative. Either it must serve or offer to serve interstate travellers, or a substantial portion of the food which it serves or other products which it sells must have moved in interstate commerce.

■ Thus, since each place of public accommodation conducts an entirely separate and distinct operation, the factual determination from which the Court must decide that it either is or it is not within the class described in the Act must be made on the circumstances of each case. The decision that is made here, therefore, must necessarily relate to these defendants only, and, by way of stare decisis, to such other places of public accommodations that are sufficiently similar in circumstances as to require the application of the same legal principles to them.

■ While the proof of actual service to interstate travellers was slight,[2] there was no doubt but that the defendants offer(ed) service to interstate travellers. This was made apparent by the fact that witnesses testified that upon presenting themselves for service no inquiry was made as to their place of residence, but probably more importantly it was proved that the restaurant has several large signs on two important business route portions of federal highways, such signs being located several blocks from the place of business; moreover,

the restaurant itself it situated on the main business route of U. S. 41, a federal interstate highway.

It is likewise clear beyond any question that a very substantial part of the dollar value of the food and other products served or sold by defendant restaurant originated outside the State of Georgia, and that it thus "has moved in in commerce". It should be made plain that this substantial portion is a very substantial figure in annual volume. The restaurant has annual gross receipts from its operations of over $500,000 for the last year, and its purchases of food exceeded $250,000. It was stipulated that it has 61 employees regularly engaged in its operation.

The principal attack made on the constitutionality of the application of the Civil Rights Act to this restaurant is largely one of degree. It is contended that if Congress is to be permitted to bring within its regulatory power what has heretofore been known as a local business merely because its business is a dealing in products which have been shipped in interstate commerce, this would, in effect, abolish all distinctions between what is local and what is national in scope, and thus all would end up in the federal domain.

The plaintiffs and the United States contend that defendants offered to serve interstate travellers, together with the fact that it unquestionably does serve some interstate travellers is sufficient, if Congress so establishes the test, to bring it within the actual stream of commerce. If such is the law, and it may well be determined by the Supreme Court to be the law, then there would be no distinction between a large restaurant serving interstate travellers and a unit of the hotel or motel industry. However, we think we need not go so far in this case, especially on account of the relatively weak proof of actual service to the travelling public, in view of the other test.

2. There is testimony from several witnesses who had made surveys for this specific purpose that on several separate occasions some two to three percent of the automobiles on the restaurant's parking lot had out-of-state licenses.

■ We are of the opinion that the Supreme Court's decision in the case of National Labor Relations Board v. Reliance Fuel Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279, and the judgment of the Court of Appeals of the Fifth Circuit, a Court whose judgments are binding on this Court, in National Labor Relations Board v. Citizens Hotel Company, 5 Cir., 313 F.2d 708, completely answer the principal contention of the defendants. The facts in the Reliance Fuel Corporation case are that the National Labor Relations Board sought to take jurisdiction in an alleged labor relations dispute by employees of Reliance Fuel Corporation. Jurisdiction of the Board was challenged on the ground that all of the fuel sold by Reliance had been purchased by it locally within the State of New York from Gulf Oil Corporation, and deliveries were made to Reliance from stocks stored in warehouses or tanks located within the state. Thus, it was contended that according to the classical argument prior to National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, the business of Reliance was "local", and its labor relations could not be subjected to congressional control. Elaborating the principle by which it decided that the Labor Board had jurisdiction, the Supreme Court said at 371 U.S. 226–227, 83 S.Ct. 313–314:

"The Act establishes a framework within which the Board is to determine 'whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or no (sic) practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce.' Polish National Alliance of United States of North America v. National Labor Relations Board, 322 U.S. [643] at 648 [64 S.Ct. 1196 at 1199, 88 L.Ed. 1509] * * *.

"That activities such as those of Reliance affect commerce and are within the constitutional reach of Congress is beyond doubt. See, e. g., Wickard v. Filburn, 317 U.S. 111 [63 S.Ct. 82, 87 L.Ed. 122]. Through the National Labor Relations Act, ' * * * Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities which in isolation might be deemed to be merely local but in the interlacings of business across state lines adversely affect such commerce.' Polish National Alliance of United States of North America v. National Labor Relations Board, 322 U.S. at 648 [64 S.Ct. at 1199]."

Similarly, the Court of Appeals for the Fifth Circuit decided in National Labor Relations Board v. Benton & Company, 5 Cir., 313 F.2d 629, that a small Florida corporation engaged in strictly local activities of dredging shells to be sold for local construction purposes was an employer within the purview of the National Labor Relations Act solely because in its operation of dredging it consumed something in excess of $50,000 per year of petroleum products, which were shipped from outside the State of Florida to the local suppliers, who then sold these products to Benton.

There remains only the question whether, if Congress now has, as we recognize it has, the power to extend regulatory control over labor policies of otherwise local businesses because, in their operations, they either utilize or buy and sell substantial quantities of products that have been in interstate commerce, we can say that it is irrational for Congress to conclude, as it has done in adopting this law, that the prevention of racial discrimination in such otherwise local businesses, is also within its regulatory

power because of the effect of such practices on interstate commerce. In applying provisions adopted by Congress under the prohibition laws, the Supreme Court, in Everards Breweries v. Day, 265 U.S. 545, 44 S.Ct. 628, 68 L.Ed. 1174, said:

> "It is likewise well settled that where the means adopted by Congress are not prohibited and are calculated to affect the object entrusted to it, this Court may not inquire into the degree of their necessity * *."

Moreover, this Court has previously sustained the Interstate Commerce Commission's order prohibiting the use by interstate carriers of segregated terminals or vehicles (even if the segregation was solely with respect to local passengers) as a valid regulation of interstate commerce. Georgia v. United States, 201 F.Supp. 813, No.Dist. of Ga., aff'd 371 U.S. 9, 83 S.Ct. 21, 9 L.Ed.2d 47.

The question here is whether Congress can reach racial discrimination to the same extent that it can reach other activities under the commerce clause. There is nothing which we can find that would indicate that Congress would not apply the same standards it has applied in cases dealing with the regulation of prices, wages, hours, labor relations, or any other attempt by Congress to exercise the full extent of its powers under the commerce clause.

 Under the Fourteenth Amendment, Congress can reach "only such action as may fairly be said to be that of the States", Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161. Under the commerce clause, the power of Congress extends to all interstate activities and also "to those activities intrastate which so *affect* (italics supplied) interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end * * *." United States v. Darby, 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609.

██ With respect to the merits of this case, we need only to apply the facts to the definition of a place of public accommodation contained in the Act. This follows from the proposition that this Court has only such jurisdiction as the Congress has given it, Article III, U. S. Constitution, and because Congress determines the extent to which commerce is to be controlled, Article I, Section 8, U.S. Constitution.

██ Congress has made the public accommodations section of the Act, as pertinent to this case, applicable to "any restaurant, cafeteria, * * * or other facility principally engaged in selling food for consumption on the premises * * *" if its operations affect commerce. Title II, Section 201(b) (2) of the Act. It has further directed that such an establishment affects commerce if "it serves or offers to serve interstate travelers or a substantial portion of the food which it serves * * * has moved in commerce".

It is clear that the definition includes the Pickrick Restaurant, a corporation.

This is the limit of this case. Congress had the power to go this far. No question of freedom of association under the First Amendment or involuntary servitude under the Thirteenth Amendment is involved.

██ It follows, therefore, that the defendants' attack on the constitutionality of the Act as applied to their operation must fail. An injunction will issue in the following terms:

### ORDER

The defendants, their successors, officers, attorneys, agents and employees, together with all persons in active concert or participation with them, are, until the further order of this Court, enjoined from:

(a) Refusing to admit Negroes to the premises of the Pickrick Restaurant upon the same basis and under the same conditions that non-Negro members of the general public are admitted to the restaurant;

(b) Failing or refusing to sell food or meals and to provide service to Negro patrons upon the same basis and in the same manner that food, meals and services are made available to patrons of other races;

(c) Otherwise failing or refusing to make any of the goods, services, facilities, privileges, advantages or accommodations of the Pickrick Restaurant available to Negroes upon the same basis and under the same conditions that they are available to other races.

So that the defendants may have an opportunity to prepare their record for appeal, and, if so advised, seek a stay of this order, it is ordered that the foregoing injunction shall become effective twenty (20) days from the date hereof, on, to-wit: the 11th day of August, 1964.

HOOPER, District Judge (specially concurring).

It must be kept in mind that the instant case while raising serious constitutional questions is now before this Court only for purposes of a temporary injunction. As the evidence shows without dispute that defendant, The Pickrick, a Corporation, through its president Lester G. Maddox, did, pursuant to a deliberate policy, refuse to serve several Negroes at the restaurant in question, and since defendants offered no testimony at this hearing this Court must decide (1) whether the restaurant in question comes within the purview of the Civil Rights Act of 1964, and if so, (2) whether Congress had the power under the Interstate Commerce Clause of the United States Constitution to require this particular restaurant to serve all proposed guests without discrimination as to race or color.

The courts will not lightly declare Acts of Congress unconstitutional, particularly on the hearing of a temporary injunction which is tried almost immediately after the filing of the complaint, and without adequate opportunity for a careful study. The Courts should construe the statute in question if possible, in a manner that will render it constitutional and not otherwise, and will not impute to Congress the intent to violate the Constitution unless that intent is manifest from the language of the Act.

(1) The so-called "Public Accommodations" section of the Act is contained in Sec. 201 of Title II, which expressly covers among other establishments, "any restaurant, * * * selling food for consumption on the premises." It provides that "[t]he operations of an establishment affect commerce" within the meaning of Title II if "it serves or offers to serve interstate travelers, or a substantial portion of the food which it serves * * * has moved in commerce."

In the instant case it appears that defendants come within the above provisions for they did in fact "offer to serve interstate travelers." The restaurant is located on U. S. Highway 41, a well-traveled street through the City of Atlanta, and defendants have erected on the highway a sign directing all travelers to the restaurant. These facts would show a particular invitation to travelers, more specific than the general invitation which all restaurants hold out to the public for customers. There is some evidence that a relatively small number of cars were found on defendants' premises bearing out of the state license tags, and I agree with the majority opinion that this evidence is weak as going to support the contention that interstate travelers frequented the restaurant. The offer to serve them, however, is clear, and it would be unthinkable that no interstate travelers did patronize defendants' restaurant as it had an attractive appearance and ample parking facilities on the interstate highway.

(2) The majority opinion rules in effect that segregation in this particular restaurant affects commerce because of the fact that "a substantial portion of the food which it serves * * * has moved in commerce." On that point I am not prepared to express an official opinion for reasons now to be stated.

As to the effect on commerce by reason of the unwillingness of restaurants along

interstate highways to serve the Negro race much evidence was adduced before the Congressional Committees. Under Secretary of Commerce Franklin D. Roosevelt, Jr., testified that Negroes, traveling from Washington, D. C. to Florida (and between other points) "would have an extremely slender choice in attempting to find overnight accommodations in hotels and motels serving white travelers along the same routes." He stated they needed a guidebook published for Negro travelers which describes places which will serve Negroes. Evidence was adduced to the effect that a Negro traveling from Washington, D. C. to Miami, a distance of 1125 miles, would be unable for an *average* of 141 miles to find reasonable sleeping accommodations. On a trip from Washington, D. C. to New Orleans, a distance of 1217 miles, this average would be 174 miles. Of course, this means that there were many intervals of much greater distance than the above averages and anyone can imagine the plight of a Negro with his family attempting to make such a journey without adequate facilities for food, rest rooms, and sleeping accommodations along the way. Therefore, little doubt should exist as to the power of Congress to legislate concerning such facilities along interstate highways (where interstate travel may be presumed to exist, or even on throughways over which interstate traffic may pass). If, however, the language of Title II is given a literal interpretation wherein there is brought within its provisions all restaurants as to which "a substantial portion of the food which it serves * * * has moved in commerce" this Court can almost take judicial cognizance of the fact that it will cover all restaurants in this state. The able Assistant Attorneys General of the United States have presented this case with clarity, ability and tact, and have filed with the Court an excellent brief of some fifty pages which greatly assists this Court. The brief cites inter alia the case of Mabee v. White Plains Publishing Company, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, applying the Fair Labor Standards Act to a newspaper whose circulation was about 9,000 copies, only 45, or about ½ of one per cent, were mailed out of state (see P. 14 of brief). Practically every restaurant buys and sells a considerable amount of food products which "have moved in commerce", including coffee, sugar, condiments, tea, canned goods, citrus fruits (in most states), vegetables, and in many states all grain products including cereals, also cigars, cigarettes, candies, etc. There are many restaurants on roads and highways never traversed by interstate travelers, some of them located in the backwoods and on dirt roads, but still a substantial portion of their food has moved in interstate commerce.

In the immediate future all of the district judges in this country will be met with cases raising difficult questions of interpretation as to this Act. Our courts face a solemn duty to properly interpret and enforce the statute so as to carry out its lawful purposes. At the same time the courts should bear in mind that they are deciding only one case at a time and not by way of obiter and generalization tend to confuse rather than to clarify the legal questions involved.

Counsel for defendants have just filed a brief with the Court, citing a number of cases and quoting the following language from National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L. Ed. 893, to-wit:

"The scope of the power of Congress over interstate commerce may not be so extended as to embrace effects upon interstate commerce so indirect and remote that to embrace them would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

In other cases the United States Supreme Court has pointed out that the question whether

" * * * the conduct of an enterprise affects commerce among the States is a matter of practical judg-

ment, not to be determined by abstract notions." See Polish National Alliance v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509.

Congress may,

"by appropriate legislation regulate intrastate activities where they have a substantial effect on interstate commerce." United States v. Darby, 312 U.S. 100, at p. 119, 61 S.Ct. 451, at p. 459, 85 L.Ed. 609.

The brief filed by defense counsel contains this language: "This is the first time, insofar as counsel for defendants can ascertain, that any statute passed by Congress has used, as a basis to support its power to regulate commerce among the states, transactions in goods which have already moved in interstate commerce, never again to enter into it."

Counsel for the Government insist, however, that while certain individual restaurants might not otherwise conduct a business affecting commerce, that the aggregate of their total business might do so. That is an approved principle of law, as pointed out in a case involving agriculture, ruling that a farmer with eleven acres of land planted in wheat for his own consumption does affect the flow of wheat in commerce when taken in the aggregate with all other small farmers in a state. No evidence has been adduced in this case, nor do I personally know whether or not the aggregate effect of many restaurants in Georgia (not located on interstate highways) refusing to serve Negroes will increase or decrease the aggregate amount of food products shipped into the state. As far as I know that question was not explored by the Congress and it was not explored in the trial of this case, and it remains an open question.

By way of summary of this hastily drawn concurrence let it be said concerning restaurants, it is my present opinion that all restaurants reasonably accessible to interstate travelers are prohibited from discriminating against Negroes in the service of food, but in order to extend such prohibition to all restaurants where a substantial portion of the food which it serves has moved in commerce there must be some showing that the discrimination does in fact affect commerce. Furthermore, that restaurants off of the main avenues of interstate travel which are offering only in a general way to serve the public cannot be said to be offering "to serve interstate travelers" within the meaning of the Act, but that The Pickrick restaurant located on an interstate highway did in fact offer to serve interstate travelers, and therefore a temporary injunction should be issued against the corporation and against Lester G. Maddox, its president, who actively engineered the discrimination.