George WILLIS, Jr., Woodrow T. Lewis, and Albert L. Dunn, Plaintiffs,

Robert F. Kennedy, Attorney General, Intervenor

v.

The PICKRICK RESTAURANT, a Corporation, and Lester G. Maddox, Defendants.

Civ. A. No. 9028.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 4, 1964.

William H. Alexander, Atlanta, Ga., Jack Greenberg, Constance Baker Motley, and Michael Meltsner, New York City, for plaintiffs.

Charles L. Goodson, U. S. Atty., Atlanta, Ga., St. John Barrett, Justice Dept., Washington, D. C., for the Attorney General.

Sidney T. Schell and William G. McRae, Atlanta, Ga., for defendants.

## ORDER DISSOLVING THREE-JUDGE COURT IN CONTEMPT PROCEEDING

■ No statutory basis appearing for the convening of a three-judge district court to hear civil contempt proceedings ancillary to suits prosecuted under the Civil Rights Act of 1964, 78 Stat. 241, it is accordingly ORDERED and ADJUDGED that the three-judge district court convened for the purpose of hearing the motions to show cause why the defendants in the within matter should not be adjudged in civil contempt for allegedly violating the order heretofore entered in the main case under date of July 22, 1964, D.C., 231 F.Supp. 396, be and the same is hereby dissolved, with all further proceedings as they relate to the civil contempt proceeding to be heard by the district court in due and normal course in its ordinary jurisdiction. See Pendergast v. United States, 1941, 314 U.S. 574, 62 S.Ct. 116, 86 L.Ed. 465, dismissing an appeal from 39 F.Supp. 189 (D.Mo., 1941). cf. Public Service Comm.

of State of Missouri v. Brashear Freight Lines, 1941, 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083; Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; and Allen v. Prince Edward County, 4 Cir., 1957, 249 F.2d 462, cert. den. 355 U.S. 953, 78 S.Ct. 539, 2 L.Ed.2d 530.

This the 25th day of August, 1964.

(s) Griffin B. Bell
Judge, United States Court of Appeals Fifth Judicial Circuit

(s) Frank A. Hooper
Judge, United States District Court Northern District of Georgia

(s) Lewis R. Morgan
Judge, United States District Court Northern District of Georgia

### ORDER CONTINUING HEARING ON CIVIL CONTEMPT CITATION

For good cause shown, the hearing set on the motions of plaintiffs and the intervenor in the within matter requiring the defendants to show cause why they should not be held in civil contempt for alleged violation of the order entered in this matter on July 22, 1964, is continued, pending further order of this Court.

This the 25th day of August, 1964.

(s) Frank A. Hooper
Judge, United States District Court Northern District of Georgia

### ORDER DENYING MOTION TO DISSOLVE INTERLOCUTORY INJUNCTION OR, IN THE ALTERNATIVE, TO STAY THE EFFECTIVE DATE THEREOF

After argument, the separate motions of the defendants to dissolve the interlocutory injunction entered in the within matter on July 22, 1964; or, in the alternative, to stay the effective date of the interlocutory injunction entered under date of July 22, 1964, and the effective date of the permanent injunction entered under date of Sept. 4, 1964, are hereby Denied. (Opinion of Judge Bell attached.)

This the 4th day of September, 1964.

(s) Griffin B. Bell
Judge, United States Court of Appeals Fifth Judicial Circuit

(s) Frank A. Hooper
Judge, United States District Court Northern District of Georgia

(s) Lewis R. Morgan
Judge, United States District Court Northern District of Georgia

GRIFFIN B. BELL, Circuit Judge (specially concurring):

I join in the order denying the within motions but for a reason different from that stated in the opinion of the majority of the Three-Judge District Court which entered the injunction in this case.[1]

My views are somewhat similar to those of Judge Hooper as set out then in his specially concurring opinion. As he stated, defendants are bound by that provision of the Civil Rights Act which prohibits discrimination in restaurants offering to serve interstate travelers. In my judgment this was as far as the court needed to go. However, the majority opinion seems to rest largely on that section of the Act, § 201(c), which proscribes discrimination in restaurants where "a substantial portion of the food which it serves * * * has moved in commerce." Because that section of the Act, as applied in this case where there was no proof that the discrimination based on race affected interstate commerce, would seem to embrace every restaurant—no matter how small or remotely located, and no matter that it serves or offers to serve only local customers, this

[1.] By order dated August 13, 1964 Judge Bell was substituted for Judge Tuttle during the period of the absence of Judge Tuttle from the Circuit to hear and determine any matters required or found advisable by the court to be heard and determined prior to his return.

caveat or dissent seems to me appropriate.

A national public accommodations law based on the Fourteenth Amendment was declared unconstitutional in 1883 in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. The Supreme Court was of the view that the Fourteenth Amendment, which is directed at state action, did not reach private enterprise. No question of the law being authorized by the commerce clause of the Constitution was specifically posed. Butts v. Merchants and Miners Transp. Co., 1913, 230 U.S. 126, 33 S.Ct. 964, 57 L.Ed. 1422. However, Congress in enacting the Civil Rights Act of 1964 expressly relied on its power to regulate interstate commerce. This power was delegated to Congress by the states. Art. I, § 8, Cl. 3, United States Constitution.

In the course of the past seventy five years Congress has seen fit to regulate private enterprise in several ways and in varying degrees under this power. Examples familiar to all are the antitrust laws, 15 U.S.C.A. § 1 et seq.; labor laws, 29 U.S.C.A. § 151, et seq.; minimum wages and fair labor standards laws, 29 U.S.C.A. § 201 et seq.; and the farm marketing regulations, 7 U.S.C.A. § 1281 et seq. These laws were upheld, respectively, by the Supreme Court in the following cases: Standard Oil Co. of New Jersey v. United States, 1911, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834; N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; United States v. Darby, 1941, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122.

The theory of regulation by the Congress was said by the Supreme Court in 1922 in the case of Stafford v. Wallace, 258 U.S. 495, 521, 42 S.Ct. 397, 403, 66 L.Ed. 735, 743, 23 A.L.R. 229, to be:

" * * * Whatever amounts to more or less constant practice, and threatens to obstruct or unduly to burden the freedom of interstate commerce is within the regulatory power of Congress under the commerce clause, and it is primarily for Congress to consider and decide the fact of the danger and meet it. This court will certainly not substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect upon it are clearly nonexistent."

And it has been settled for many years that the power of Congress to regulate interstate commerce extends to intrastate activities and facilities which affect interstate commerce. N. L. R. B. v. Jones & Laughlin Steel Corp., supra. No doubt the continued use by the Congress of this clause of the Constitution as a repository of power from which it may pass legislation to meet new problems as they arise in our national life stems from the teaching of Chief Justice Marshall who said in 1819 in the case of McCullough v. Maryland, 4 Wheat. 316, 407, 415, 4 L.Ed. 579, 602–04, that:

" * * * we must never forget that it is a *constitution* which we are expounding * * *. [The Constitution was] intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs." (Emphasis in original.)

But, as the Supreme Court made clear in N. L. R. B. v. Jones & Laughlin Steel Corp., supra, where it recognized the limitation upon the federal power which inheres in the constitutional grant under the commerce clause, and the reservation of power under the Tenth Amendment:

"The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several States' and the internal concerns of a state. The distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system. * * * "

Congress, in the exercise of its function under our Federal system, has now barred discrimination based on race or color in restaurants serving or offering to serve interstate travelers. This appears to be well within its power to protect interstate commerce as it relates to interstate travel. Moreover, a substantial argument can be made that it is not unreasonable to extend the reach of that power to others seeking restaurant service at the same restaurant. This would follow from the line of cases recognizing such power where it is not feasible to separate interstate from intrastate activities. Thornton v. United States, 1926, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013; Currin v. Wallace, 1930, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; and Southern Railway Company v. United States, 1911, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72.

But what of the local restaurant—one that neither serves nor specifically offers to serve interstate travelers. This is the nub of the constitutional question presented, and the point of difference with the majority of the court entering the injunction. In the second category of coverage, Congress barred discrimination in any restaurant where a substantial portion of the food served has moved in commerce. Judge Hooper stated that the court could take judicial notice of the fact that this would include every restaurant within this state. I agree. Georgia produces no coffee, tea or pepper. It mines no salt, and this is only the beginning of items necessary to restaurant operation. Citrus products, among others, could be named to say nothing of the many foods grown in Georgia, but which are processed or packed elsewhere for return to Georgia.

This assertion of power over local business to an unprecedented extent by the Congress rests on the premise that discrimination in restaurants, regardless of size, character or location, affects interstate commerce. Congress has so assumed, and thus any question of whether it is in fact so has been eliminated as a subject of judicial or even factual inquiry. As thus interpreted, Congress in my judgment has overreached its power, and intruded into affairs reserved to the states. Indeed thirty four states had public accommodation laws of one kind or another prior to the action of the Congress with which we are now concerned. See the Civil Rights Act of 1964, BNA Operations Manual, p. 363.

The government seeks to support the basic premise that discrimination per se affects interstate commerce, wherever practiced, by three contentions. First, it is urged that discrimination impedes commerce in that it amounts to a restriction on the movement of goods in commerce. This is another way of saying that the restaurant business would be increased in the absence of discrimination; hence, more goods would move in commerce. Next, it is said that Congress has the power to promote the flow of goods in commerce by removing the cause of any dispute which would obstruct that flow. This is undoubtedly the teaching of the cases involving labor disputes but only when it has been shown that interstate commerce is affected and this is done on a case by case basis. N. L. R. B. v. Jones & Laughlin Steel Corp., supra; N. L. R. B. v. Reliance Fuel Company, 1963, 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279. Thirdly, it is argued that Congress has the power to prevent racial discrimination where its practice distorts the natural movement of persons and industries in interstate channels when the discrimination creates a reluctance to locate or operate in segregated areas.

I do not see how these arguments can be maintained in every instance. They may be true in some cases but not in others, and herein lies the fallacy in the basic premise. As heretofore noted, the Supreme Court has declared the rule to be that a court may not substitute its judgment for that of the Congress unless the relation of the subject to interstate commerce and its effect upon it are clearly non-existent. Stafford v. Wallace, supra. I am of the opinion that the relation of discrimination to interstate commerce in some local restaurants, or its effect upon commerce in these and

others could be non-existent. Congress has left no room, under the government's view of the Act, for such restaurants.

Thus, it follows that this particular portion of the Act whereby all restaurants which serve goods that have moved in commerce are included in the proscription would be unconstitutional as applied to the defendants, absent proof of the requisite effect upon commerce by the discrimination. However, as between two possible interpretations of a statute, by one of which it would be unconstitutional and the other valid, it is the duty of a court to adopt that which will save the Act. N. L. R. B. v. Jones & Laughlin Steel Corp., supra, and cases there cited. I would construe this provision of the Act to be constitutional in the case of a restaurant where a substantial portion of the goods served has moved in interstate commerce, if also adequate proof is adduced that the discrimination practiced in the restaurant "substantially affects interstate commerce." See United States v. Darby, supra, where the court stated that Congress may regulate intrastate activities "where they have a substantial effect on interstate commerce."

The aggregation doctrine is said to save this section of the Act. All local discrimination, when added together, is said to affect commerce. The aggregation doctrine stems from the case of Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122, sustaining marketing quota regulations under the Agricultural Adjustment Act where the wheat was planted for a farmer's own use on the theory that it was necessary to regulate all of the wheat crop to successfully regulate any part of it. This case has little value as a precedent on the discrimination problem in view of the obviousness of the proposition in a farm marketing quota case, and the nonobviousness of it as now asserted in connection with the problem of discrimination.

Another theory said to be helpful flows from cases involving labor disputes where local companies dealing only indirectly in interstate commerce are subjected to the jurisdiction of the Labor Board under the Labor Act. These rest on the fact that labor disputes tend to disrupt commerce. Most labor disputes have chain propensities. Those that do not are local and are not covered by the Act. This is the teaching of the Jones & Laughlin case. Not all local businesses are covered. It is up to the Labor Board to determine which affect interstate commerce and which do not. The criterion is said to be effect and not source. This was the construction given the Labor Act by the Supreme Court to render it constitutional. Under the present Act, insofar as the public accommodations section is concerned, no such determination can be made. Congress has already made it. Nothing is left in the local category. Suit is to be filed; the court must accept as a fact that the discrimination affects commerce, and go from there. Congress, as the Act was construed by the Supreme Court, did not go so far in the Labor Act. See also Polish National Alliance of United States of North America v. N. L. R. B., 1944, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509. It did not go so far in the Fair Labor Standards Act where employees receive the benefit of the Act for work which affects interstate commerce, such as where work is done on the roof of a building used by an interstate industry, but not when the work is of an intrastate nature, such as the next week when the work is on the roof of a residence. Wirtz v. Ferguson, 5 Cir., 1963, 317 F.2d 343.

This construction of the public accommodations section of the Act is buttressed by the fact of the use by the Congress of two categories of coverage. If no proof of discrimination affecting commerce is required under the goods moving in commerce category, it would appear to have been wholly unnecessary for Congress to have included the first category covering restaurants serving or offering to serve interstate travelers. These would be included in the second category. It is as to cases involving the first category, in my opinion, that no proof is required that the discrimination affects interstate commerce.

In sum, under the construction of this portion of the Act contended for by the government, it is necessary in every case to show that a substantial portion of the goods being served has moved in interstate commerce. As I construe the Act, so as to render it constitutional, it will be necessary to show in addition that the discrimination in question substantially affects interstate commerce. Of course, no such proof is necessary to invoke the coverage of the Act as to restaurants serving or offering to serve interstate travelers. And here the defendant restaurant corporation offered to serve, if it did not in fact serve interstate travelers. Thus the motions must be denied.

I am authorized to say that Judge HOOPER joins in the conclusions reached herein.

## FINAL JUDGMENT

The plaintiffs, intervenor, and the defendants having stated in open court that no further evidence would be tendered by either party, and all parties having requested that the matter be treated as a hearing on the petition for final permanent injunction, an injunction will issue in the following terms:

## ORDER

The defendants, their successors, officers, attorneys, agents and employees, together with all persons in active concert or participation with them, are permanently enjoined from:

(a) Refusing to admit Negroes to the premises of the Pickrick Restaurant upon the same basis and under the same conditions that non-Negro members of the general public are admitted to the restaurant;

(b) Failing or refusing to sell food or meals and to provide service to Negro patrons upon the same basis and in the same manner that food, meals and service are made available to patrons of other races;

(c) Otherwise failing or refusing to make any of the goods, services, facilities, privileges, advantages or accommodations of the Pickrick Restaurant available to Negroes upon the same basis and under the same conditions that they are available to other races.

Let this order be for a permanent injunction and said judgment be the final order of this Court.

(s)
FRANK A. HOOPER
United States District Judge*

(s)
LEWIS R. MORGAN
United States District Judge*

---

* The permanent injunction and final judgment of this Court is entered by a quorum of the Court in the absence of Chief Judge Elbert P. Tuttle, Fifth Circuit Court of Appeals, who is outside of the Circuit and temporarily unable to perform his duties as Judge of the Fifth Circuit Court of Appeals.