Samuel ADAMS, Plaintiff,

v.

FAZZIO REAL ESTATE CO., Inc., et al., Defendants.

Civ. A. No. 67–467.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 9, 1967.

———◆———

Robert F. Collins, New Orleans, La., and John O. Fox, Washington, D. C., for plaintiff; Richard B. Sobol, New Orleans, La., of counsel.

Val A. Schaff, III, John M. Currier, Warren Mouledeaux, New Orleans, La., for defendants.

RUBIN, District Judge.

The plaintiff contends that the defendants have denied him the right to bowl in their bowling alley and that this deprives him of rights granted him by the Civil Rights Act of 1964.[1] The central issue is whether a bowling alley in which a snack bar is located is a public accommodation within the meaning of the Act. The resolution of this issue turns solely on the interpretation of the statute.

Section 201 of the Civil Rights Act of 1964 declares that all persons are entitled to the full and equal enjoyment of any place of public accommodation as

---

1. This is an action instituted under Title II of the Civil Rights Act of 1964, 42 U. S.C.A. § 2000a et seq. The plaintiff asks the Court to enjoin the defendants from denying him or members of his class and race the rights and privileges guaranteed by the public accommodation section of the Act. He brings this class action on behalf of himself and other persons similarly situated and affected. There are common questions of law and fact affecting their rights to use the services and facilities owned and operated by the defendants.

defined in that section.[2] It nowhere reaches bowling alleys as such, and that portion of the statute that affects places of entertainment does not extend to bowling alleys.[3] However, the Act does define as a covered place of public accommodation:

"any establishment * * * within the premises of which is physically located any * * * covered establishment, and * * * which holds itself out as serving patrons of such covered establishment." [4]

█ Thus, if a covered establishment is located within an establishment not otherwise covered by the law, it may by its very presence make the larger establishment subject to the Act. The defendants operate a facility that they call a snack bar, and the plaintiff contends that this is a covered establishment, for the Act applies to " * * *

any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises * * *." [5]

## FACTUAL BACKGROUND

The defendants, Fazzio Real Estate Co., Inc., Fazzio's Recreation Center, Inc., and Dominico E. Fazzio, own and operate Fazzio's Bridge Bowl ("Fazzio's"), which is located on the West Bank of the Mississippi River in Algiers, directly across the river from New Orleans.

Fazzio's is located off the West Bank Expressway (U. S. Highway 90), directly across the highway from the Algiers Fisher Project (a federal low-rent housing project) where the plaintiff lives. It is clearly visible to anyone traveling on the Expressway. However, a chain link fence six feet high separates Fazzio's

2. Section 201(a) of Title II of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a (a), reads as follows:

"All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

3. Section 201(b) (3), 42 U.S.C.A. § 2000a (b) (3), includes as a place of public accommodation:

"any motion picture house, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment * * *" (Emphasis supplied.)

Senator Magnuson in presenting Title II of the Act to the Senate stated:

"The following establishments would therefore be exempt: Barber shops and beauty parlors. Lawyers, doctors, and other professional people. Dance studios. Bowling alleys and billiard parlors." Cong. Record-Senate, 88th Cong. 2d Sess., Vol. 110, part 6, p. 7407.

See also BNA, The Civil Rights Act of 1964, page 83:

"During the debates in the House, however, bowling alleys were mentioned specifically several times as examples of establishments outside the scope of the Act unless they operate lunch counters." See Miller v. Amusement Enterprises,

Inc., E.D.La., 1966, 259 F.Supp. 523, holding that the Act did not extend to an amusement park. The opinion noted that, while there were concession stands operated by the defendant where refreshments were served, the plaintiffs were making no claim for coverage under 201 (b) (4) but their sole contention was that this was a "place of entertainment."

4. These are the pertinent words of Section 201(b) (4) which reads in full as follows:

"any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."

5. Section 201(b) (2), 42 U.S.C.A. § 2000a (b) (2). A bowling alley is therefore a public accommodation if it is established that:

(a) There is a restaurant, cafeteria, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises; and

(b) This food selling facility is located within the premises of the bowling alley; and

(c) The bowling alley holds itself out as serving patrons of the food selling facility.

from the Expressway making it accessible only from Behrman Highway.

Together with a number of other Negroes who reside in New Orleans, plaintiff went to Fazzio's on March 30, 1967, to bowl. Defendant refused to let plaintiff or the other persons who were with him bowl because they were Negroes.

Fazzio's is housed in a building containing 29,900 square feet. An area containing about 18,600 square feet is devoted to bowling alleys. An area of approximately 9,500 square feet is devoted to equipment counters and other facilities necessary for bowling. An area of approximately 1,200 square feet is used as a lounge for the sale of alcoholic beverages. The premises also contain a counter where beverages and food are sold. The plaintiff calls this a "lunch counter," obviously because the Civil Rights Act applies in haec verba to "any lunch counter." Signs in the bowling alley refer to it as a "snack bar," and the defendants prefer this designation, obviously because it is not one used by the Civil Rights Act. For purposes of this opinion, this area will be called by the suitably neutral name of refreshment counter.

The area is approximately 37 feet long and 13 feet wide. It has stools for the seating of 15 people. The principal items sold are beer, soft drinks (including Coca Cola), hamburgers, hot dogs, coffee, and other similar items. Customers are not asked whether or not they live in Louisiana. Non-residents are not denied service. Fazzio's does not advertise its refreshment counter service except by signs inside the bowling alley.

The refreshment counter is located directly behind the bowler's end of the bowling lanes. They are fully accessible to each other, and they are not separated by a partition or screen of any kind.

Fazzio's offers bowlers what it considers a unique service. Each lane is connected with the refreshment counter by an intercom, and a bowler can place an order for beverages or food without leaving his place at the alley. Such orders are delivered to bowlers by a porter. At the bowlers' end of each alley, there is a space for the seating of spectators. Spectators as well as bowlers are allowed to take food and beverages from the refreshment counter to the seating area. Chairs in the seating area have special racks to hold beverage containers.

Fazzio's urged that more than 50% of the sales made at the refreshment counter are sales of beer, therefore the facility is principally engaged in selling beer, and beer is not a food. This conclusion is sought to be supported by the decision in Cuevas v. Sdrales, 10 Cir., 1965, 344 F.2d 1019, cert. denied 1966, 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 528, in which it was held that bars and taverns where the sale of drinks is the principal business are not covered establishments.[6] Secondly, Fazzio's urges that, even if the facility would itself be a covered establishment were it alone, it occupies only 2% of the space in the building, it provides less than 8% of the center's gross revenue, and its operation is therefore purely incidental to the operation of the bowling alley, and hence it is not covered by the Act.

The bowling alley building also contains a "lounge area" which is leased to a third person. This lounge is devoted primarily to the sale of alcoholic beverages. The plaintiff urges, however, that if the bowling alley is a covered establishment, the lounge would also become covered; lunch counter brings in bowling alley; bowling alley brings in lounge. However, the operators of the lounge are not made defendants to this action.

---

6. See in accord Tyson v. Cazes, E.D.La., 1965, 238 F.Supp. 937, reversed on other grounds, 5 Cir., 1966, 363 F.2d 742, holding that a bar and night club that serves only drinks is not a restaurant and is not subject to the Act. In the reversing opinion the court commented that, "At the hearing of this appeal the plaintiff conceded that the Celebrity Lounge, as a bar and lounge, does not qualify in one of the enumerated accommodations under Section 201 of the 1964 Act."

## THE "SNACK BAR" AS A LUNCH COUNTER OR A FACILITY PRINCIPALLY ENGAGED IN THE SALE OF FOOD

Section 201(b) (4) [relative to an establishment which becomes a public accommodation because it includes a covered establishment] makes it clear that the mere physical presence of a covered establishment within the premises of a non-covered establishment makes the non-covered establishment a public accommodation.

 The first question to be answered is whether the refreshment counter is a "restaurant," a "lunch counter" or "other facility principally engaged in selling food for consumption on the premises." The terms "restaurant," "lunch counter," and "other facility principally engaged in selling food for consumption on the premises" are not terms of art. They are words in common usage, and they are employed in the statute in their ordinary meaning.[7]

Webster's New International Dictionary does not define the term "lunch counter," but the phrase is defined in A Dictionary of Americanisms as "a counter or a restaurant at which people, usually seated on stools, are served meals or refreshments." A restaurant is defined in Webster's as "an establishment where refreshments or meals may be procured by the public." And the same authority defines a "snack bar" as "a public eating place where snacks are served usually at a counter." The sole distinction between a "snack bar" and a "lunch counter" lies in a minor difference in the type of food served. "Lunch" is a "light meal usually in the middle of the day," or "a light meal taken at any time of the day or night at a selected place," according to Webster's, while a "snack" is defined by the same dictionary as "food served or taken informally usually in small amounts and typically under other circumstances than as a regular meal."

So far as this case is concerned, it is hard to see any substantial distinction in the dictionary definitions of "snack bar" and "lunch counter." It is even harder to conceive that Congress intended to draw a distinction between these two types of refreshment counters. Both snack bars and lunch counters engage in selling refreshments as well as food. They both sell sandwiches, light meals, and beverages.

 In essence, Fazzio's argument comes to this: The refreshment counter is not a lunch counter because it sells more beer than food. Beer is not food. When food and beer are sold together, but a greater dollar volume of beer is sold than food, the seller is not principally engaged in the sale of food.[8] However, the argument won't stand up. The evidence shows that more than 50% of the sales from the refreshment counter

---

7. "* * * [w]e must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." Richards v. United States, 1962, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492, 498. Where Congress did not define a term employed in a statute, it could be assumed that it was intended that the word should have its ordinary meaning and that it was not employed as term of art. Heli-Coil Corp. v. Webster, 3 Cir., 1965, 352 F.2d 156. "It must be presumed that in using terms undefined in the statute, Congress intended the words to have their natural, ordinary and familiar meaning." United States v. 525 Co., 5 Cir., 1965, 342 F.2d 759, 761.

8. The plaintiff argues that beer is food, citing dictionary definitions, a pamphlet entitled "Beer as an Adjunct in Low-Sodium Diets," the Food, Drug and Cosmetic Act, 21 U.S.C.A. § 321(f); and cases applying that statute in which beer was treated as adulterated food within its terms; and various state court decisions in other contests. It is not necessary to decide here whether or not beer is food within the meaning of the Civil Rights Act of 1964, but the *Cuevas* case is persuasive on that point. In addition, what is "food" within the meaning of one law is not necessarily "food" within the meaning of another. Even as one man's meat is another man's poison, one man's intoxicant may be another man's food. And vice versa.

are sales of food and non-alcoholic beverages. And refreshment counter sales are substantial in relationship to total bowling alley revenues. In the first six months of the counter's operation, Fazzio's total sales were $128,075. Refreshment counter sales amounted to $29,945.[9]

■ Fazzio's itself doesn't call the facility a "bar" or a "tavern"; it refers to the facility as a "snack bar." In physical appearance, it looks like a lunch counter. Service is at a counter provided with stools. The counter is of the kind generally used in facilities called "lunch counters" rather than the kind customarily used in bars. The posted menu lists a variety of sandwiches and beverages; beer is only one of many items listed. The public would see nothing amiss in a sign calling it a lunch counter. The judge who said it could not be so characterized would be shutting his eyes to the normal meaning of the words used in the Act.

The statutory language leads clearly to this result. Congressional committee reports confirm it. What is said in Congressional committee reports and in debates should not change the meaning of clear statutory language.[10] But these do afford insight into Congressional intent. They demonstrate whether the statutory language was inadvertent or clearly directed to the intended purpose.

Honorable Robert W. Kastenmeier who joined in the majority report of the House Judiciary Committee on H.R.

9. The sales from the facility were as follows:

| | From 4/16/66 To 9/30/66 | From 10/1/66 To 3/31/67 |
|---|---|---|
| Total sales of food, beer, and non-alcoholic beverages | $29,945 | $30,614 |
| Total sales of beer | $13,982 | $12,944 |
| Total sales of food and non-alcoholic beverages | $15,963 | $17,670 |
| Beer sales as a % of total sales | 47% | 43% |
| Food and non-alcoholic beverage sales as a % of total sales | 53% | 57% |
| Gross income from refreshment counter sales | $14,775 | Not disclosed by defendant's exhibits |
| Gross income from beer sales | $ 6,611 | Not disclosed by defendant's exhibits |
| Gross income from beer as a % of total refreshment counter gross income | 45% | Not disclosed by defendant's exhibits |
| Gross income from food and non-alcoholic beverage sales as a % of total refreshment counter sales | 55% | Not disclosed by defendant's exhibits |
| Total Gross Profit | $88,791 | Not disclosed by defendant's exhibits |

10. Fisher Flouring Mills Company v. United States, 9 Cir., 1958, 270 F.2d 27; Rederiaktierbolaget v. Compania De Navegacion Anne, S.A., D.C. Canal Zone, 1955, 139 F.Supp. 327.

7152, which became the Civil Rights Act of 1964, filed a separate report in which he said that in his opinion the bill was of dubious morality because it covered bowling alleys that serve sandwiches and permitted bowling alleys that did not serve sandwiches to remain segregated.[11] That is the necessary consequence of the statutory structure.

██ However, even if we conclude that the facility is not a lunch counter and isolate for decision the question whether it is a facility engaged principally in the sale of food for consumption on the premises, we would again reach the conclusion that this is a covered establishment. Lord Tenterden's Rule, or the rule of ejusdem generis, assists us in interpreting this phrase,[12] for it tells us that the term implies a facility like a restaurant or lunch counter. The comparable section in Senate Bill 1732 extended to "any other public place engaged in selling food for consumption on the premises." The House Bill, H.R. 7152, the text of which became the Civil Rights Act of 1964 used the language "any other facility principally engaged in selling food for consumption on the premises." The reports do not give the reasons for the changes, but the word "facility" is obviously intended to be broader than the words "public place." The adverb "principally" as a modifier to the verb, "engaged," does not appear designed to limit its scope. The word "principally" implies that the sale of food must be the "main" or "chief activity" [Webster's Third International Dictionary] and the sale of food clearly is the main or chief activity of the refreshment counter.

### UNITIZED OPERATIONS

██ Taking a cue from language in Kyles v. Paul, E.D.Ark., 1967, 263 F. Supp. 412, Fazzio's argues that its bowling alley is a "single operation with the sales of food and drink being merely adjuncts to the principal business" of providing bowling facilities to the public.[13] If it is indeed material to statutory coverage whether the physically contained cov-

11. Congressman Kastenmeier was criticizing the Act because it didn't go far enough. Notwithstanding his criticism no change was made. His report reads in part as follows:

"In Title II, the bill reported by the full committee is deficient in that it guarantees equal access to only some public accommodations, as if racial equality were somehow divisible. Discrimination is prohibited in the reported version of H.R. 7152 in all hotels and lodginghouses (with a minor exception), eating places, and places of entertainment and spectator sports. At the same time, the bill would allow discrimination to continue in barber shops, beauty parlors, many other service establishments, retail stores, bowling alleys, and other places of recreation and participation sports, unless such places serve food. It is hard to follow a morality which allows one bowling alley to remain segregated, while another bowling alley down the street which serves sandwiches must allow Negroes to bowl." 2 U.S.Cong. and Adm.News (1964), p. 2410.

See also BNA, Civil Rights Act of 1964, page 84: "During the legislative debates on this aspect of the Act, it seemed to be generally assumed that the second category would embrace such lunch-counter-operating establishments as bowling alleys, skating rinks, and amusement parks."

12. "Literally, that phrase means 'of the same kind or species.' It is a well known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of a statute or other written instrument, and, under the maxim, where an enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms." Bumpus v. United States, 10 Cir., 1963, 325 F.2d 264, 267. See also United States v. Alpers, 1950, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457; Gooch v. United States, 1936, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522.

13. In Kyles v. Paul, E.D.Ark., 1967, 263 F.Supp. 412, 417, the Court commented that " * * * the snack bar operations were purely incidental to the recreational facilities, and the income derived from the sales of food and drinks was small in comparison to the income derived from fees for the use of recreational facilities."

ered establishment is or is not an important part of the overall operation, it suffices to point out that the defendants in the *Kyles* case proved that the sale of food and drink was purely an ancillary operation by closing this facility entirely. Fazzio's here concedes in effect that it would be undesirable from the business standpoint for it to do this.

But the language quoted from the *Kyles* case cannot be read alone. It is followed by the observation, "Section 201(b) (4) plainly contemplates at least two establishments, one of them covered by the Act, operating from the same general premises. See e. g. Pinkney v. Meloy, N.D.Fla., 241 F.Supp. 943. That situation does not exist here." This referred of course to the outdoor recreational areas involved in that case.[14] The situation contemplated by the Act does exist here. The *Pinkney* case cited by the Court in *Kyles* with approval held a barber shop located in a hotel to be a covered accommodation because it was in a hotel even though barber shops generally are not covered by the Act.

## FLOOR SPACE RATIO

■ The statute contains no percentage test, and it is not necessary to show that the covered establishment which magnetizes the non-covered establishment in which it is physically located occupies a majority, or even a substantial part of the premises, or that its sales are the major or even a substantial part of the revenues of the establishment.[15] When Congress wished to require 'substantiality with respect to a standard employed by the Act, it said so: thus Section 201(c) states that, "The operations of an establishment affect commerce * * * if * * * a substantial portion of the food it serves * * * has moved in commerce." [16]

## HOLDS ITSELF OUT AS SERVING PATRONS OF THE COVERED ESTABLISHMENT

Fazzio's does not question that the bowling alley holds itself out as serving patrons of the refreshment counter. Of course it is not the primary function of the bowling alley to serve the patrons

14. The facilities were described as follows:

"The facilities available at both establishments are essentially the same although those at Lake Nixon are considerably more extensive than those available at Spring Lake. Primarily, the recreation offered is of the outdoor type, such as swimming, boating, picnicking, and sun bathing. Lake Nixon also has a miniature golf course.

"There is a snack bar at each establishment at which hamburgers, hot dogs, some sandwiches, soft drinks, and milk were sold to patrons during 1965 and 1966."

15. No opinion is here expressed concerning the question that would be presented if the sales from the covered establishment were so small as to be trifling and hence potentially subject to the de minimis rule.

16. See the Minority Report Upon Proposed Civil Rights Act of 1963, Committee on Judiciary Substitute for H.R. 7152, cited in The Civil Rights Act of 1964, BNA, pp. 213–214, in which the minority members commented on the deliberate avoidance of the use of a test of substantiality

in various portions of the law as follows:

"An establishment is classified in the bill (sec. 201(b) (c)) as engaging in interstate commerce if it 'provides lodging to transient guests' or 'it serves or offers to serve interstate travelers.' This broadens the coverage provided in the subcommittee proposal which made such classification if the accommodations, goods and services 'are provided to a substantial degree to interstate travelers' or if a substantial portion of the goods offered has 'moved in interstate commerce.' As to the latter requirements the wording of the bill is, ' * * * it serves or offers to serve, interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which it sells has moved in commerce.' It will therefore be seen that the proposed bill covers any establishment, offering lodging to transient guests, even though it does not have guests traveling in interstate commerce. The bill also covers any establishment which offers to serve interstate travelers even though a substantial portion of the food which it serves, or other products which it sells, has not moved in interstate commerce."

of the counter; instead the counter is there to serve bowlers. But the bowling alley does serve food customers. There is no physical separation between the counter and the bowling lanes. The intercom permits bowlers to order food or drink from the counter delivered to their alley. Metal holders designed for beverage cans or cups are installed on the bowling chairs. Food and beverage customers are encouraged to take their orders away from the counter for consumption, and tables are provided for this purpose in addition to the use of the seats around the bowling areas.

### EFFECT ON INTERSTATE COMMERCE

It is conceded that the refreshment counter is located within the premises of the bowling alley. But restaurants and other food service facilities are covered establishments only if they affect commerce. Section 201(c) of the Act provides that an establishment affects commerce if:

(a) it serves interstate travelers, or

(b) it offers to serve interstate travelers, or

(c) a substantial part of the food which it serves has moved in interstate commerce.[17]

It is not disputed that a substantial part of the food served at Fazzio's refreshment counter has moved in interstate commerce.[18] While Fazzio's does not seek to attract interstate travelers to its counter, and displays no road signs for this purpose, there is no contention that Fazzio's seeks to bar interstate travelers or makes any effort to inquire whether or not its customers are residents.[19] The tests set forth with

---

17. "These tests are in the alternative. Either it must serve or offer to serve interstate travelers, or a substantial portion of the food which it serves or other products which it sells must have moved in interstate commerce." Willis v. Pickrick Restaurant, N.D.Ga., 1964, 231 F.Supp. 396, 399. Also see Newman v. Piggie Park Enterprises, D.C., S.C., 1966, 256 F.Supp. 941.

18. We take judicial notice of the fact that the defendant's coffee and tea originated outside the state of Louisiana. Willis v. Pickrick Restaurant, N.D.Ga., 1964, 231 F.Supp. 396; also see the specially concurring opinion of Judge Bell in Willis v. Pickrick Restaurant, N.D.Ga., 1964, 234 F.Supp. 179, 183. The court can take judicial notice that bread ingredients come from other states. Kyles v. Paul, E.D.Ark., 1967, 263 F.Supp. 412. Sales of coffee and other products that originated outside Georgia were found to support coverage in Gregory v. Meyer, 5 Cir., 1967, 376 F.2d 509, No. 23948.

19. The statutory standard that operations of an establishment affect commerce "if it serves or offers to serve interstate travelers," appears to have been considered satisfied by minimal evidence. In Gregory v. Meyer, 5 Cir., 1967, 376 F.2d 509, No. 23948, the Court said: "The testimony was that customers were not questioned as to tourist status, and that tourists were not rejected as customers. One white interstate customer was served without inquiry as to his status. * * *"

In Newman v. Piggie Park Enterprises, Inc., D.C.S.C., 1966, 256 F.Supp. 941, 951, the Court stated: " * * * [T]he direct evidence produced by plaintiffs that defendant served or offered to serve interstate travelers is slight, unimpressive and inconclusive; however, from all the circumstances before the court there is no doubt but that defendant has served and is serving interstate travelers. This is apparent from the testimony of a witness that upon presenting himself for service * * * no inquiry whatever was made as to her place of residence * * *. [D]efendants' drive-ins are located upon much traveled interstate and federal highways with large signs at and about each location advertising its products. * * * Moreover [defendant] employs no reasonably effective means of determining whether its customers are inter- or intrastate travelers." In this case the defendant had posted a sign saying that it serves only intrastate travelers.

In Heart of Atlanta Motel, Inc. v. United States, 1964, 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258, 269, the Supreme Court sustained the constitutionality of the act, saying, "It is said that the operation of the motel here is of a purely local character. But, assuming this to be true, '[i]f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.' United States v. Women's Sportswear Mfrs. Assn., 336 U.S. 460, 464 [69 S.Ct. 714, 716, 93 L. Ed. 805, 811] (1949). * * *"

respect to effect on interstate commerce are not exclusive,[20] and a facility is covered if it meets any of the three criteria. Fazzio's refreshment counter does serve interstate travelers and a substantial part of the food it serves has moved in commerce. It therefore is a covered establishment.

## TRIAL BY JURY

 Injunction is an equitable remedy and there is no right to a jury trial of this case as the defendants contend.[21] Indeed one of the arguments urged against the passage of the Civil Rights Act of 1964 was that it permitted trial without a jury.[22]

## ATTORNEY'S FEES

 The plaintiff seeks an award of attorney's fees under the provisions of 42 U.S.C.A. § 2000a-3(b). Such an award is discretionary with the Court. Under all circumstances present in this case, it is my considered judgment that the Court should not grant attorney's fees.

## DECREE

For the reasons given, the Court concludes that Fazzio's is a public accommodation. Since the hearing on the prayer for a preliminary injunction and the hearing on the prayer for a permanent injunction were consolidated, by order of the Court, an injunction will be issued restraining and enjoining the defendants from withholding, denying or attempting to withhold or deny to the plaintiff and members of the class he represents the rights to which he is entitled under Section 201(a) of the Civil Rights Act of 1964. Counsel for the plaintiff will prepare a draft of a proposed injunction and submit it to the Court, after first mailing a copy to the defendants. The defendants will submit any comments on and objections to the text of the proposed injunction within three days after receiving it. Thereafter, the decree will be framed and entered by the Court.

---

20. See Note 17 supra.

21. The Seventh Amendment guarantees a trial by jury only "in suits at common law." It is well settled that suits for an injunction are not suits at common law and are tried without a jury. Simler v. Conner, 1963, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691; United States v. State of Louisiana, 1950, 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216; NLRB v. Jones & Laughlin, 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893.

22. In BNA, Civil Rights Act of 1964, page 180, the "Additional Views of Honorable George Meader," to the House Judiciary Committee Report on H.R. 7152, he criticized the proposed bill for following a growing tendency to govern by injunction. "These actions are commonly known as suits in equity, or in chancery, to be heard by the judge without a jury (except in rare cases)."

See also the separate minority views of Honorable Richard H. Poff and Honorable William Cramer, House Judiciary Committee Report, cited in BNA, Civil Rights Act of 1964, page 229, criticizing the House Bill for furthering the process of government by injunction. There is no express statement in this minority report that the injunctive proceeding would be tried without a jury.