453 F.2d 152
 Clarence HAMILTON, Chairman of the Hopi Tribal Council of
the Hopi Indian Tribe, for and on behalf of the Hopi Indian
Tribe, including all villages and clans thereof, and on
behalf of any and all Hopi Indians claiming any interest in
the lands described in the Executive Order dated December
16, 1882, Plaintiff-Appellant,
v.
Raymond NAKAI, Chairman of the Navajo Tribal Council of the
Navajo Indian Tribe for and on behalf of the Navajo Indian
Tribe, including all villages and clans thereof and on
behalf of any and all Navajo Indians claiming any interest
in the lands described in the Executive Order dated December
16, 1882; John N. Mitchell, Attorney General of the United
States, on behalf of the United States, Defendants-Appellees.
 No. 26588.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 3, 1971.
Rehearing Denied Jan. 18, 1972.
 
 John S. Boyden (argued), Stephen G. Boyden (argued), Salt Lake City, Utah, Fennemore, Craig, Von Ammon & Udall, Phoenix, Ariz., for plaintiff-appellant.
 Jack E. Brown (argued), of Brown, Vlassis & Bain, Phoenix, Ariz., Glen R. Goodsell (argued), Dept. of Justice, Washington, D. C., Harold E. Mott, Albuquerque, Ariz., Shiro Kashiwa, Asst. Atty. Gen., George R. Hyde, Washington, D. C., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for defendants-appellees.
 Before DUNIWAY and TRASK, Circuit Judges, and FERGUSON,* District Judge.
 DUNIWAY, Circuit Judge:
 
 
 1
 The action in which this proceeding was filed was authorized by P.L. 85-547, the Act of July 22, 1958, 72 Stat. 403. The purpose of the action, which was brought by the Hopi Indian Tribe against the Navajo Indian Tribe and the Attorney General on behalf of the United States, was to determine the rights and interests of the Hopi and Navajo Indian Tribes and individual Indians in a reservation in northeastern Arizona established by an Executive Order of December 16, 1882, and to quiet title to that reservation. A three-judge United States District Court held that, subject to the trust title of the United States, the Hopi Tribe had the exclusive interest in that part of the reservation lying within the boundaries of a land management district administratively defined in 1943, and that the Hopi and Navajo Tribes each had an undivided and equal interest in all the reservation lying outside the boundaries of the land management district. Healing v. Jones, D.Ariz., 1962, 210 F.Supp. 125. The Supreme Court affirmed this judgment. Jones v. Healing, 1963, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703.
 
 
 2
 On March 13, 1970, the Hopi Indian Tribe petitioned the District Court for an order of compliance or writ of assistance to enforce its rights as a co-tenant. More specifically, in paragraphs 3 and 4 of their prayer for relief, the Hopi requested an order:
 
 
 3
 "3. Directing the defendants to forthwith grant and permit the joint use and possession of the surface, including all resources, in and to all of the executive order reservation of December 16, 1882, lying outside of the boundaries of land management district 6, as defined on April 24, 1943 to the Hopi Indian Tribe and Navajo Indian Tribe, share and share alike, and to remove such Navajo livestock from said lands as is necessary to accomplish such joint use without further damage to said lands."
 
 
 4
 "4. Directing the Clerk of this court to issue a writ of assistance to compel performance of the judgment of [the] court entered herein on September 28, 1962, and to allow the plaintiff, the Hopi Tribe, to enter upon said joint use area, and with the Navajo Tribe to jointly and equally use and benefit from the grazing forage and all other surface resources of said area, for the benefit of the respective members of said tribes until further order of this court."
 
 
 5
 The District Court denied the Hopi's petition on August 3, 1970. The Hopi appeal and we reverse.
 
 
 6
 I. Jurisdiction of the Court of Appeals.
 
 
 7
 The defendants-appellees argue on a number of grounds that this court lacks jurisdiction of the appeal.
 
 
 8
 A. Rules 54(b) and 58.
 
 
 9
 The Navajo claim that the District Court's order is not a "final decision" within the meaning of 28 U.S.C. Sec. 1291 because it fails to satisfy the requirements of Rule 54(b). That rule states that ". . . any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. . . ." F.R.Civ.P. Rule 54(b). The Navajo argue that the Hopi's petition requested relief in the form of an injunction and of a writ of assistance, and that the District Court's order denied only the petition for a writ of assistance. They conclude that the order lacks finality under Rule 54(b) because the District Court passed on only one of these claims. The petition, however, seeks only one thing-enforcement of the rights of the Hopi as established by the decree, and the court denied the entire petition.
 
 
 10
 The Navajo further claim that the order of the District Court does not satisfy that part of Rule 58 which requires that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth. . . ." The Navajo apparently feel that the District Court's onesentence explanation of the order transformed it into an opinion or a memorandum, thereby failing to satisfy Rule 58. We think not. To allow the one-sentence explanation embodied in the order to transform it into an opinion or memorandum rather than an order would be the proverbial elevation of form over substance. The document was explicitly denominated an "order," and was apparently understood to be such by the parties. The Supreme Court has held that "[a] pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of every action. . . ."' Brown Shoe Co. v. United States, 1962, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510. We have no doubt that the court, the parties, and the clerk considered the August 3, 1970, order as final. There is no reason to subject the parties to further expense and delay by requiring them to return to the District Court to have a new order entered.
 
 B. 28 U.S.C. Sec. 1291
 
 11
 The appellees argue that this court does not have jurisdiction under 28 U.S.C. Sec. 1291. That section vests jurisdiction in this court over appeals from all final decisions of the United States district courts ". . . except where a direct review may be had in the Supreme Court." P.L. 85-547 provided that ". . . any party may appeal directly to the Supreme Court from the final determination [of the] three-judge district court." This court has indicated that it lacks jurisdiction in the face of a similar statutory provision. See, e. g., United States v. F M C Corp., 9 Cir., 1963, 321 F.2d 534. However, for the reasons set out in Part IV of this opinion, we hold that the Hopi's petition should properly be acted upon by a single district court judge, thus making the order appealable here rather than to the Supreme Court.
 
 
 12
 II. The issuance of a Writ of Assistance in a suit to quiet title.
 
 
 13
 A. The court's power to afford a remedy, coextensive with its jurisdiction
 
 
 14
 P.L. 85-547 contained the following provision:
 
 
 15
 "The Navaho Indian Tribe and the Hopi Indian Tribe, acting through the chairman of their respective tribal councils for and on behalf of said tribes, including all villages and clans thereof, and on behalf of any Navajo or Hopi Indians claiming an interest in the area set aside by Executive order dated December 16, 1882, and the Attorney General on behalf of the United States, are each hereby authorized to commence or defend in the United States District Court for the District of Arizona an action against each other and any other tribe of Indians claiming any interest in or to the area described in such Executive order for the purpose of determining the rights and interests of said parties in and to said lands and quieting title thereto in the tribes or Indians establishing such claims pursuant to such Executive order as may be just and fair in law and equity. The action shall be heard and determined by a district court of three judges in accordance with the provisions of title 28, United States Code, section 2284, and any party may appeal directly to the Supreme Court from the final determination by such three judge district court."
 
 
 16
 (Emphasis added.) 72 Stat. 403.
 
 
 17
 The three-judge district court convened pursuant to this Act decided that as to a portion of the 1882 Executive order lands:
 
 
 18
 "The Hopi and Navajo Indian Tribes have joint, undivided, and equal interests as to the surface and sub-surface including all resources appertaining thereto, subject to the trust title of the United States.
 
 
 19
 "It is just and fair in law and equity that the rights and interests of the Hopi and Navajo Indian Tribes be determined in the manner just stated, and that the respective titles of the two tribes in and to the lands of the 1882 reservation be quieted in accordance with that determination." Healing v. Jones, 210 F.Supp. at 192.
 
 
 20
 Despite this judgment, the Navajo contend that the P.L. 85-547 did not confer jurisdiction on the three-judge district court or any member of it to issue a writ of assistance. The Navajo reason from the premise that the ". . . three-judge requirement is a technical one to be narrowly construed. . . ." Bailey v. Patterson, 1962, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512. See also Jehovah's Witnesses in the State of Washington v. King County Hospital Unit No. 1 (Harborview), W.D.Wash., 1967, 278 F.Supp. 488, 493; Gate Film Club v. Pesce, S.D.N.Y., 1964, 236 F.Supp. 828, 829. They point out that P.L. 85-547 does not explicitly provide for the issuance of a writ of assistance.
 
 
 21
 The cases cited deal with the question whether a three-judge court should hear an action in the first instance, not with whether such a court has the power to enforce a judgment rendered in a case that it has properly determined, which is the question here.
 
 
 22
 The Supreme Court long ago established the principle that the power of a court to afford a remedy must be coextensive with its jurisdiction over the subject matter:
 
 
 23
 "Jurisdiction is defined to be the power to hear and determine the subjectmatter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to enforce such judgment or decree. (Citations omitted).
 
 
 24
 "Express determination of this court is, that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. Consequently, a writ of error will lie when a party is aggrieved in the foundation, proceedings, judgment, or execution of a suit in a court of record. (Citations omitted.)
 
 
 25
 "Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purpose for which it was conferred by the Constitution." (Emphasis added.) Riggs v. Johnson County, 1867, 73 (6 Wall.) U.S. 166, 187, 18 L.Ed. 768.
 
 
 26
 This principle has been applied within the specific context of judgments rendered by three-judge district courts. See American Insurance Co. v. Lucas, W.D.Mo., 1941, 38 F.Supp. 926. There the question was whether a final decree of a three-judge court, obtained or induced by fraud, could later be set aside by that court. The appellant in Lucas argued that such a proceeding fell outside the statutory authorization of the three-judge court, an argument rejected by the court:
 
 
 27
 "The fact that a challenged decree was entered by a three-judge court makes no difference. It is a decree and nothing more, regardless of whether it was rendered by a onejudge court or a three-judge court.
 
 
 
 * * *
 The decisions . . . relied upon [by the appellant] go no further than that only the classes of litigation set out in the statute are within the jurisdiction of the statutory court. They do not even hint that, once having that jurisdiction properly, such a court cannot exercise all of the ordinary equitable powers of a District Court in respect to such litigation." Id. at 932.
 
 
 P
 L. 85-547 clearly provided the three-judge district court with the authority to quiet title, and an action to quiet title is essentially a suit in equity. Sharon v. Tucker, 1892, 144 U.S. 533, 544, 12 S.Ct. 720, 36 L.Ed. 532; Bowen v. Chase, 1876, 94 U.S. 812, 24 L.Ed. 184
 The equitable jurisdiction of a federal court extends to supplemental or ancillary bills brought for the purpose of effectuating a decree of the same court. See Root v. Woolworth, 1893, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123. In Root the Court emphasized that "[t]he jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance, in order to avoid the relitigation of questions once settled between the same parties, is well settled." Id. at 411-412, 14 S.Ct. at 139. Furthermore, in Root the appellant contended that no relief should be granted because the present bill sought possession, a matter that was not covered in the original decree. The Court held that this fact did not preclude the relief requested. Id. The Court has affirmed this approach in a number of subsequent decisions. See generally Dugas v. American Surety Co., 1937, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720; Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230; Walmac Co. v. Isaacs, 1 Cir., 1955, 220 F.2d 108.
 Here, as in Root, the power of the court to issue the order requiring compliance or to enforce the judgment by a writ of assistance follows from the principle that a court's power to afford a remedy must be coextensive with its jurisdiction over the subject matter. The decision in Healing adjudged joint and equal title in the Hopi and Navajo Tribes to a portion of the 1882 reservation, and the right to joint possession follows that title even though, as in Root, the original decree did not make explicit provisions concerning possession.
 These principles have found expression not only in judicial decisions, but also in a specific statutory enactment, the "All Writs" Act, 28 U.S.C. Sec. 1651(a):
 "The Supreme Courts and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."
 The present case meets all the requirements of Sec. 1651(a). First, if the allegations of the Hopi's petition are true, "necessity" rests on the side of the Hopi. They allege that the Navajo have denied to the Hopi the joint use and benefit of the property in question, and that the United States, as trustee and guardian of the property, has neglected its duty to see that the original decree was effectively implemented.
 
 
 A
 writ of assistance is also "appropriate" under Sec. 1651(a). Of course, this statutory provision does not confer original jurisdiction, but rather, prescribes the scope of relief that may be granted when jurisdiction otherwise exists. Hill v. United States Board of Parole, M.D.Pa., 1966, 257 F.Supp. 129, 130. See also Stafford v. Superior Court, 9 Cir., 1959, 272 F.2d 407, 409; Dodge v. Nakai, D.Ariz., 1968, 298 F.Supp. 17. But once jurisdiction has attached, powers under Sec. 1651(a) should be broadly construed. Dixie Highway Express, Inc. v. United States, S.D. Miss., 1967, 268 F.Supp. 239, rev'd on other grounds, 1967, 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639. In Dixie, a case that involved a three-judge panel, the court concluded, "The universal rule is that every court has the inherent power to enforce its judgment and decrees. The All Writs Statute appears as a Congressional reaffirmation of that power." Id. at 240
 Finally, a writ of assistance in a suit to quiet title is also "agreeable to the usages and principles of law." In Healing the court did not direct that joint possession of the joint use area be delivered to the Hopi, but the court did quiet their title, as co-tenants, and determined that both tribes, for the common use and benefit of their respective members, have joint undivided and equal rights. In these circumstances a writ of assistance is "agreeable to the usages and principles of law." Montgomery v. Tutt, 1858, 11 Cal. 190. In Montgomery there was a decree of sale that did not require or provide for the delivery of possession of the premises to the purchaser. After the possessor refused to surrender possession, a writ of assistance was sought. The Supreme Court of California held that the writ should issue:
 "The power of the court to issue the judicial writ, or to make the order, and enforce the same by a writ of assistance, rests upon the obvious principle that the power of the Court to afford a remedy must be co-extensive with its jurisdiction over the subject matter. Where the Court possesses jurisdiction to make a decree, it possesses the power to enforce its execution. It is true that in the present case the decree does not contain a direction that the possession of the premises be delivered to the purchaser. It is usual to insert a clause to that effect, but it is not essential. . . [A]s the right to the possession . . . follows title, it would be an useless and vexatious course to require the purchaser to obtain such possession by another suit. Such is not the course of procedure adopted by a Court of Equity." Id. at 192.
 Nor does it matter that the request for a writ of assistance or possession follows by a number of years the rendering of the decree quieting title. Los Angeles v. Forrester, 1936, 12 Cal.App.2d 146, 55 P.2d 277; Park v. Powers, 1935, 2 Cal.2d 590, 42 P.2d 75; Doggett v. Johnson, 1928, 82 Mont. 338, 267 P. 292. Cf. Burney v. Lee, 1941, 57 Ariz. 41, 110 P.2d 554. Although most of the foregoing cases arose in state courts, the few federal cases that bear on this question agree in principle with the cases discussed. See, e. g., Ohio Oil Co. v. Thompson, 8 Cir., 1940, 120 F.2d 831, 837.
 Neither P.L. 85-547 nor 28 U.S.C. Sec. 2284, to which it refers, contains any restrictions on the power of the court to enforce its judgment. The Act authorizes suit "in the United States District Court for the District of Arizona." It is beyond the possibility of argument that a United States District Court has power to enforce its judgments. Absent some contrary provision in the jurisdictional statute, that power exists in this case.
 
 
 B
 The effect of the sovereign immunity of the United States and the Navajo Tribe on the court's power to grant relief
 The Navajo also say that the sovereign immunity of the United States and the Navajo Tribe impose restrictions on the kind of relief a court can afford. This contention represents only a slight variation from the arguments just considered above. The claim is that P.L. 85-547 waived the sovereign immunity of the United States and the Navajo from a suit to quiet title, but not from the relief requested by the Hopi in their March 13, 1970, petition. We reject this claim for the same basic reason that we rejected the first-namely, when jurisdiction has properly attached in a three-judge district court, the remedial powers of the court are not restricted absent an express provision in the authorizing legislation.
 It is true that both the United States, United States v. Sherwood, 1941, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058; Magnus v. United States, 7 Cir., 1956, 234 F.2d 673, and Indian Tribes such as the Navajo, Turner v. United States and Creek Tribe, 1919, 248 U.S. 354, 358, 39 S.Ct. 109, 63 L.Ed. 291; Adams v. Murphy, 8 Cir., 1908, 165 F. 304, 308; Thebo v. Choctaw Tribe, 8 Cir., 1895, 66 F. 372, 373-374, enjoy sovereign immunity and cannot be sued without the consent of Congress. The sovereign immunity of Indian tribes is coextensive with that of the United States. United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. When Congress does give consent to suit, that consent is subject to such conditions or limitations as Congress sees fit to impose. United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. Furthermore, any conditions or limitations "must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 1957, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306.
 In many instances, Congress has imposed such conditions and limitations. For example, the Federal Tort Claims Act contains a section providing for specific exceptions to the waiver of immunity. 28 U.S.C. Sec. 2680. And under 28 U.S.C. Sec. 2679 the exclusiveness of the remedy is specified. Courts have held that this limitation on the remedy precludes the granting of an injunction. Hatahley v. United States, 1956, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065. From these cases and statutory provisions the Navajo draw the conclusion that a remedy not specified in the statute waiving sovereign immunity cannot be used against the United States or the Navajo.
 At most, however, the cited statutes and cases stand for the proposition that where Congress explicitly provides for the exclusiveness of a remedy, or in some other way restricts or limits the remedy, courts have no power to grant additional remedies. This proposition has no application to the present case, because P.L. 85-547 confers jurisdiction to quiet title, and without restriction or limitation on that authority.
 An analogous statute is 28 U.S.C. Sec. 2410(a), which also provides for an action against the United States to quiet title. Section 2410 contains no explicit provision for or against injunctive relief.
 Courts have issued injunctions under Sec. 2410. Sonitz v. United States, D.N.J., 1963, 221 F.Supp. 762; National Iron Bank v. Manning, D.N.J., 1948, 76 F.Supp. 841; Tower Production Co. v. United States, W.D.Okl., 1945, 61 F.Supp. 411; cf. Bartell v. Riddell, S.D.Cal., 1962, 202 F.Supp. 70. It is no answer to say that in those cases the court's remedial powers stemmed not only from Sec. 2410, but also from 28 U.S.C. Sec. 2463. The latter section contains the following provisions: "All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." 28 U.S.C. Sec. 2463. The Navajo conclude that this provision merely codifies the principle that a court has remedial jurisdiction to prevent dispositions of property to which its jurisdiction has already attached.
 The Navajo correctly interpret the import of Sec. 2463, but misconstrue the holdings of the cases cited above. While some of those cases did involve both sections 2410 and 2463, the injunctive relief granted by the respective courts did not stem only from Section 2463. In Sonitz, for example, the court was not interested only in preventing the disposition of property to which its jurisdiction had already attached. The court specifically held that Sec. 2410 exists to permit taxpayers to expunge Government tax liens and thereby quiet title to their property. More important, the court further indicated that any other relief incidental to such a determination could be granted. Sonitz, supra, 221 F.Supp. at 765. And in Power Production Company, supra, the court granted injunctive relief, 61 F.Supp. at 414.
 Other cases cited by the Navajo do not help them. Rambo v. United States, 5 Cir., 1945, 145 F.2d 670, is cited for the proposition that federal courts have no general equity jurisdiction in cases against the United States. Other cases are cited for the proposition that jurisdictional statutes must provide expressly for injunctions before such relief can be granted. See, e. g., Superior Oil Co. v. United States, 9 Cir., 1965, 353 F.2d 34; United States v. Merchants Transfer & Storage Co., 9 Cir., 1944, 144 F.2d 324. However, all of these cases only hold that the granting of an injunction was improper because the United States had not consented to suit in the first instance. Other cases cited are similar. See, e. g., Consumers Union v. Veterans Administration, S.D.N.Y., 1969, 301 F.Supp. 796; Suess v. Pugh, N.J.W.Va., 1965, 245 F.Supp. 661; Chester v. Ross, N.D.Ga., 1964, 231 F.Supp. 23.
 Finally, the Navajo argue that even when the United States does consent to be sued, it nevertheless remains immune from execution and garnishment unless such relief is specifically consented to. They then say that under Arizona law a writ of assistance amounts to the equitable equivalent of a writ of execution. See Burney v. Lee, 1941, 57 Ariz. 41, 110 P.2d 554. The Navajo's case support again misses the mark; their principal case authority, United States v. Krakover, 10 Cir., 1969, 377 F.2d 104, stands only for the proposition that execution and garnishment will not be permitted where the United States has not consented to suit in the first instance.
 III. Partition.
 The United States argues that the relief sought is, in essence, a decree of partition, and that the district court was not given jurisdiction to partition the lands in question. In Healing v. Jones, supra, the three-judge court squarely held that it did not have authority to partition. 210 F.Supp. at 190-192. That decision was affirmed by the Supreme Court and is now the law of the case. However, the short answer to the argument of the United States is that the relief sought is not a decree of partition; it is enforcement of the decree quieting title in co-tenants, which the court did have authority to enter.
 IV. The granting of a writ of assistance by a single judge.
 There still remains the question whether a single judge can issue process to enforce the judgment. This question is closely tied to the question whether we have jurisdiction of an appeal from his refusal to do so. Public Service Comm'n v. Brashear Freight Lines, Inc., 1941, 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083, provides guidance. There, a trucking firm challenged the constitutionality of a state bus and truck law and a three-judge court, convened under the predecessor of 28 U.S.C. Sec. 2281, upheld the constitutionality of the law. The state public service commission, the defendant in the suit, then moved before a single judge for an assessment of damages and costs against the plaintiffs and their injunction bond sureties. The Supreme Court held that this matter should be considered by the district court in the exercise of its ordinary jurisdiction and did not require the attention of the full three-judge court. It reasoned that the motion for damages raised questions not within the statutory purpose for which the two additional judges had been called. Id. at 625, 61 S.Ct. 784. Courts have consistently followed the Brashear result in similar fact situations. See Pabst v. Campbell, S.D.Ind., 1957, 150 F.Supp. 71; Kenny v. United States, D.N.J., 1954, 118 F.Supp. 907.
 Courts have also adopted the reasoning of the Brashear case in other areas of law. See Willis v. Pickrick Restaurant, N.D.Ga., 1964, 234 F.Supp. 179; cf. Chandler v. Garrison, E.D.La., 1968, 286 F.Supp. 18. In Willis the court held that a civil contempt proceeding ancillary to suit prosecuted under the Civil Rights Act of 1964 should be heard by one judge and not the original three-judge court.
 The parallels between these cases and the present one are striking. In both, the parties involved before the three-judge court and the single district judge were the same. In both, the action before the respective courts was the same; the second proceeding was merely ancillary to the main action.
 The courts have also addressed themselves to the specific question of enforcement. See Allen v. County School Bd. of Prince Edward County, 4 Cir., 1957, 249 F.2d 462, where a three-judge court entered a decree requiring desegregation of certain public schools. The plaintiffs later moved for an order fixing a time limit for compliance with the decree. The Fourth Circuit held that the motion, which was in the nature of enforcement, was properly heard by a single judge. Allen v. County School Bd. of Prince Edward County, 249 F.2d at 464.
 The appellee-United States relies heavily on Dixie Highway Express, Inc. v. United States, S.D.Miss., 1967, 268 F.Supp. 239, and Stratton v. St. Louis Southwestern Ry. Co., 1930, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135. In Dixie a three-judge district court, in a suit to review a decision of the Interstate Commerce Commission, held that the Commission had failed to reconsider its decision as required in a remand by the same court to the Commission. The same three-judge district court heard the case both times (242 F.Supp. 1016 (1965) and 268 F.Supp. 239 (1967)), but in neither decision did the court indicate that a single judge could not enforce the judgment of a three-judge court. Stratton involved the failure of a single district judge to comply with a federal statute requiring the commencing and hearing of a suit in a three-judge district court rather than, as here, a petition for enforcement of a judgment previously entered by a three-judge court.
 Finally, both the appellees assert that 28 U.S.C. Sec. 2284(5) prohibits a single district judge from granting a writ of assistance. That provision states that in a case to be determined by a three-judge district court "[a] single judge shall not . . . enter a summary or final judgment." This proceeding does not seek a judgment; it seeks enforcement of a judgment already entered.
 We hold, as the Court did in Brashear, supra, that the three-judge court, when it entered its judgment, had fulfilled the statutory purpose for which the two additional judges had been called. The present proceeding is not an "action or proceeding required by Act of Congress to be heard and determined by a district court of three judges." 28 U.S.C. Sec. 2284.
 It follows that under the principles applied by the Supreme Court in Hicks v. Pleasure House, Inc., 1971, 404 U.S. 1, 92 S.Ct. 5, 30 L.Ed.2d 1 (1971), jurisdiction of this appeal is in this court, not the Supreme Court.
 
 
 V
 Other contentions
 
 
 A
 Failure to join the Secretary of Interior
 The Navajo contend that the Hopi's petition should fail because the Secretary of the Interior, who the Navajo assert, would necessarily be involved in implementing the writ of assistance, was not joined in the present proceeding. See generally Webster v. Fall, 1925, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Hospoder v. United States, 3 Cir., 1953, 209 F.2d 427. These cases, however, have no application here, because Section 1 of P.L. 85-547 authorized a suit against "the Attorney General on behalf of the United States. . . ." Thus, the statute did not require that the Secretary of the Interior be joined, and we see no reason why appellant should now be required to join him in a proceeding to enforce the original judgment. In his official capacity, the Secretary represents the United States; here, he is sufficiently represented by the Attorney General.
 
 
 B
 The authority of a federal district court to determine controversies between Indian tribes or their members
 Finally, the United States argues that the federal district courts are not authorized to determine controversies between Indian tribes or their members. However, the cases relied upon stand only for the rule that a federal district court cannot act where it does not have jurisdiction of the subject matter. See Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 8 Cir., 1967, 370 F.2d 529; Prairie Band of Pottawatomie Tribe v. Puckkee, 10 Cir., 1963, 321 F.2d 767; Martinez v. Southern Ute Tribe, 10 Cir., 1960, 273 F.2d 731; Martinez v. Southern Ute Tribe, 10 Cir., 1957, 249 F.2d 915. Here, P.L. 85-547 expressly conferred jurisdiction.
 VI. Relief.
 We are told that it would not be possible to grant the relief sought because many Navajo are permanently settled on the lands in question. In support of the argument we are then confronted with a parade of horribles. Are the Navajo to be ordered to share their hogans with the Hopi? Must they share such gardens as they have, or stock corrals, etc.? Obviously, where the tract of land is large and the population is sparse, these are straw men. A District Judge is not a creature without judgment or imagination. He can hear testimony from the parties and from representatives of the United States as to what the actual situation is, and can tailor the relief to be afforded to the facts that confront him, always bearing in mind that the objective is to achieve what the court has decreed, the exercise by the Hopi and the Navajo of their "joint, undivided and equal interests as to the surface and subsurface and all resources appertaining thereto [in the lands in question], subject to the trust title of the United States."
 The order is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation