Abbott SEKAQUAPTEWA, Chairman of the Hopi Tribal Council of the Hopi Indian Tribe, For and on Behalf of the Hopi Indian Tribe, Plaintiff-Appellee,

v.

Peter MacDONALD, Chairman of the Navajo Tribal Council of the Navajo Indian Tribe, For and on Behalf of the Navajo Indian Tribe, Defendant,

Emmett Tso and Faye Tso, Applicants Intervenors-Appellants.

No. 76–3223.

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1979.

Robert L. Miller (argued), Tuba City, Ariz., for applicants intervenors-appellants.

John S. Boyden (argued), of Boyden, Kennedy, Romney & Howard, Salt Lake City, Utah, for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and EAST,* District Judge.

* The Honorable William G. East, Senior United States District Judge, for the District of Oregon, sitting by designation.

**1290**

CHOY, Circuit Judge:

■ Emmett and Faye Tso, members of the Navajo Tribe, appeal from the district court's denial without prejudice of their motion to intervene in the instant case.[1] We affirm.

## I. Statement of the Case

This suit is one brought by the Hopi Tribe against the Navajo Tribe and is intended to settle a long-standing dispute over certain lands declared an Indian Reservation by Congress. Act of June 14, 1934, 48 Stat. 960. The Hopi claim an undivided one-half interest in all of the 1934 Reservation lands. They also seek partition of the 1934 Reservation in accordance with their claims. The Navajo counter that the 1934 Reservation belongs solely to them.[2] Congress made this suit possible by "waiving" the sovereign immunity of the two tribes for the limited purpose of having this land dispute resolved. 25 U.S.C. § 640d–7.

On September 18, 1973, a fire destroyed the dwelling of Emmett and Faye Tso, located midway between the Navajo community of Tuba City, Arizona, and the Hopi village of Moencopi, Arizona. The Tso homesite is entirely within the 1934 Reservation, the area involved in the Hopi-Navajo dispute.[3]

Consistent with the Hopi position that the land upon which the Tsos' home had stood is Hopi land, the Hopi Tribal Court temporarily enjoined the Tsos from rebuilding on the site. Initially, the Tsos appeared specially in the Hopi Court to contest its jurisdiction to issue an injunction against them. The court denied the Tsos' motion to dismiss. Rather than contesting the restraint on the merits or appealing the court's decision to the Hopi Appellate Court,[4] the Tsos filed an action under the Indian Civil Rights Act, 25 U.S.C. § 1302, in the federal district court seeking to test the

1. This court follows a two-part rule for determining the appealability of a denial of a motion for intervention as of right under Fed.R.Civ.P. 24(a). That rule provides that a denial of a Rule 24(a) motion is a final judgment appealable to this court, see *Brennan v. Silvergate Dist. Lodge No. 50*, 503 F.2d 800, 803 (9th Cir. 1974); *Reich v. Webb*, 336 F.2d 153, 156 (9th Cir. 1964), *cert. denied*, 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800 (1965), unless "the would-be intervenors have alternative means of relief," *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977); see *Brennan v. Silvergate Dist. Lodge No. 50*, 503 F.2d at 803.

The Tsos have carefully worded their appeal as one from a denial of intervention as of right under Rule 24(a). Here, unlike in *Hawaii-Pacific*, where the appellants had two alternatives to intervention—either showing that they were members of the class involved in the action or bringing independent actions on their individual claims—it does not appear that the Tsos have any alternative open to them other than intervention; their independent suit to enforce their rights under the Indian Civil Rights Act has been stayed pending the outcome of this case and the outcome of this case will decide that civil rights claim. Therefore, we find that we have jurisdiction to hear the Tsos' appeal.

However, we find that we need not reach the merits of the Tsos' claim that they have a right to intervene under Rule 24(a). Assuming that the Tsos do meet all of the requirements of 24(a) for intervention as of right, they cannot

participate in this suit for the reasons we give in part II *infra*.

2. The named parties in the suit, the chairman of each of the tribes, represents his tribe's interests in the matter by Congressional designation. See 25 U.S.C. § 640d–7(a); *Sekaquaptewa v. MacDonald*, 448 F.Supp. 1183, 1187 (D.Ariz.1978) (Sekaquaptewa's alleged representation of tribe, villages, clans and individual members not inconsistent with Congressional scheme in 640d to 640d–24, given 640d–17(c) authorization of supplemental actions).

3. The dispute here centers around all 1934 Reservation land other than that portion established as a reservation by the Executive Order of December 16, 1882. See 25 U.S.C. § 640d–7(a). The 1882 Reservation is the subject of a separate dispute between the tribes. See 25 U.S.C. §§ 640d to 640d–6; *Sekaquaptewa v. MacDonald*, 575 F.2d 239 (9th Cir. 1978); *Healing v. Jones*, 210 F.Supp. 125 (D.Ariz.1962), *aff'd*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963).

4. Hopi Ordinance 21, § 1.2.6 provides:

The Appellate Court shall have power to issue any writs or orders necessary and proper . . . or to prevent or remedy any act of the Trial Court beyond such Court's jurisdiction.

Sekaquaptewa argues that this provision provided the Tsos with an opportunity to seek a special writ from the Appellate Court on the jurisdictional issue.

validity of the injunction.[5]  The civil rights action has been stayed pending final resolution of the case now before this court.

Having otherwise failed to secure the relief they sought, the Tsos then moved to intervene as parties defendant in this Hopi-Navajo· litigation.

## II.  *The Tsos' Motion for Intervention*

### A.  *Sovereign Immunity of Indian Tribes*

It is settled that

both the United States [citations omitted] and Indian Tribes such as the Navajo [citations omitted] enjoy sovereign immunity and cannot be sued without the consent of Congress.  The sovereign immunity of Indian tribes is coextensive with that of the United States.  [Citation omitted.]

*Hamilton v. Nakai*, 453 F.2d 152, 158 (9th Cir. 1971), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972);  *see Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 169–73, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977);  *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512 & n.11, 60 S.Ct. 653, 84 L.Ed. 894 (1940).  It is also clear that

[w]hen Congress does give consent to suit, that consent is subject to such conditions or limitations as Congress sees fit to impose.  [Citation omitted.]  Furthermore, any conditions or limitations "must be strictly observed and exceptions thereto are not to be implied."

*Hamilton v. Nakai*, 453 F.2d at 159, *quoting Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957);  *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978);  *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941);  *United States v. United States Fidelity &*

*Guaranty Co.*, 309 U.S. at 513, 60 S.Ct. 653;  *United States v. Shaw*, 309 U.S. 495, 501–04, 60 S.Ct. 659, 84 L.Ed. 888 (1940);  *Hill v. United States*, 571 F.2d 1098, 1101 (9th Cir. 1978);  *Mitchell v. Riddell*, 402 F.2d 842, 846 (9th Cir. 1968), *appeal dismissed & cert. denied*, 394 U.S. 456, 89 S.Ct. 1223, 22 L.Ed.2d 415 (1969).

### B.  *Congressional Consent to Suit of Tribes Under 25 U.S.C. § 640d–7.*

■  Both parties agree that absent congressional permission, neither tribe could maintain an action against the other to resolve the 1934 Reservation dispute.  However, 25 U.S.C. § 640d–7 provides, *inter alia*:

(a) Authorization to commence and defend actions in District Court

Either tribe, *acting through the chairman of its tribal counsel for and on behalf of the tribe*, is each hereby authorized to commence or defend in the District Court an action *against the other tribe* and any other tribe of Indians claiming any interest in or to the area described in the Act of June 14, 1934 [the 1934 Reservation], except the reservation established by the Executive Order of December 16, 1882, *for the purpose of determining the rights and interests of the tribes in and to such lands and quieting title thereto in the tribes.*

(b) Allocation of land to respective reservations upon determination of interests

Lands, if any, in which the *Navajo Tribe or Navajo individuals* are determined by the District Court to have the exclusive interest shall continue to be a part of the Navajo Reservation.  Lands, if any, in which the *Hopi Tribe, including any Hopi village or clan thereof, or Hopi*

---

5.  25 U.S.C. § 1302 provides *inter alia*:

  No Indian tribe in exercising powers of self-government shall—
    . . .
    (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law  .  .  .  .
The Tsos claim a "customary use right," which they say is a property interest protected by

Navajo law.  Navajo Tribal Code tit. 16, § 552(a) ("Whenever as a result of [an action] by the Navajo Tribe  .   .   .  the value of any part of such land for its customary use by any Navajo Indian  .   .   .  is destroyed or diminished, the Navajo Tribe will compensate the former Indian user  .   .   .  .").

*individuals* are determined by the District Court to have the exclusive interest shall thereafter be a reservation for the Hopi Tribe. Any lands in which the *Navajo and Hopi Tribes or Navajo or Hopi individuals* are determined to have a joint or undivided interest shall be partitioned by the District Court on the basis of fairness and equity and the area so partitioned shall be retained in the Navajo Reservation or added to the Hopi Reservation, respectively.

(Emphasis added.)

■ Section 640d–7(b) does indicate that Congress intended rights of individuals to be determined in a suit such as that before the court. However, a reading of the entire statutory scheme relating to the settlement of the Hopi-Navajo dispute, Pub.L.No.93–531, 88 Stat. 1712, 25 U.S.C. §§ 640d to 640d–24, as well as the legislative history of those provisions indicates that Congress did not intend that individual tribal members be allowed to participate in such a suit. In enacting these statutes, Congress, while not unconcerned with the rights of individuals, was primarily motivated by the need to settle the tribal dispute over the 1934 Reservation quickly and fairly. *See* 120 Cong. Rec. 37724–49 (1974) (debate on H.R.10337; replete with references to "tribal" rights and interests). Additionally, in passing §§ 640d–10 to 640d–18, Congress indicated that redress of injuries to individuals occasioned by a tribal resolution was to be by way of compensation and relocation. *See* 120 Cong.Rec. 37725 (comments of Sen. Fannin),[6] 37728 (comments of Sen. Bible), 37730 (11 guiding principles employed in designing H.R.10337, particularly principle 9), 37732 (comments of Sen. Montoya). Finally, § 640d–17(c) provides that individual interests may be litigated in a suit between the two tribes only when those interests are represented by the tribal chairmen.[7]

We conclude that individuals are barred from participating in a suit authorized under 25 U.S.C. § 640d–7. Congress has provided conditions and limitations upon its permission to sue the tribes.[8] The Tsos do

---

**6.** Senator Fannin said,

> No solution is perfect. Administration of this bill will necessarily result in a certain amount of dislocation and the removal of some persons from their present residences. It must not be forgotten however, that those who must be moved are not in their present locations by any right which can override the right of the Hopi Tribe to the use of the lands to which it is legally entitled. And the financial advantages to those who do move represent a great opportunity for them . . . .

120 Cong.Rec. 37725. Senator Fannin was then speaking to a version of the bill which provided for a congressional partitioning of the 1934 Reservation.

**7.** Section 640d–17(c) provides:

> Either tribe may institute such further original, ancillary, or supplementary actions against the other tribe as may be necessary or desirable to insure the quiet and peaceful enjoyment of the reservation lands of the tribes by the tribes and the members thereof, and to fully accomplish all the objects and purposes of [the legislation relating to the Hopi-Navajo dispute]. Such actions may be commenced in the District Court by either tribe against the other, acting through the chairman of its tribal council, for and on behalf of the tribe, including all villages, clans, and individual members thereof.

**8.** The Tsos make much of *Hamilton v. Nakai*, 453 F.2d 152, 158–59 (9th Cir. 1971), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972), where this court in construing a statute remarkably similar to § 640d–7, *see* Pub.L.No. 85–547, 72 Stat. 403 (1958), concluded that a court could issue an order of compliance and a writ of assistance to enforce its judgment against the Navajo Tribe in a case dealing with the Hopi-Navajo dispute over the 1882 Reservation. The court found that because the 1958 statute provided for jurisdiction to quiet title without limitation, the district court could properly issue the order and writ sought by the Hopi.

In this case, we are not faced with a question of the appropriateness of relief sought by a proper party under the congressional enabling act. Instead, the issue here is whether individual tribal members may intervene in a suit by one tribe against another where Congress has only authorized suit between the tribes. *Hamilton* does not address the scope of Congress' permission to sue as it affects rights of intervention. It therefore does not aid the Tsos. In fact, it indicates that any conditions or limitations imposed by Congress regarding its permission to sue a tribe must be strictly observed. *Id.* at 159; *see* part IIA *supra*.

not fall within this circumscribed grant of jurisdiction. Therefore, the district court did not err in refusing to allow the Tsos to intervene.[9]

AFFIRMED.

**9.** In *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894 (1940), the Supreme Court refused to allow a cross claim against an Indian tribe in the absence of congressional permission to sue. The Court reasoned that such an extension of the doctrine of sovereign immunity to cross claims was necessary to make effective the public policy which protects Indian tribes from judicial attacks.

Similar concerns prompt our conclusion here. Congress was concerned with a speedy and fair resolution of the dispute between the tribes. *See* 120 Cong.Rec. 37724–49 (1974). It limited its permission to sue to suits brought by a tribe (through its chairman) against another tribe. To allow the Tsos to intervene in this case would not "strictly observe" the conditions and limitations Congress placed upon its permission to sue and would contravene the public policy which protects Indian tribes from judicial attacks.