Vernon **MASAYESVA**, Chairman of the
Hopi Tribal Council of the Hopi Indian
Tribe, for and on behalf of the Hopi
Indian Tribe, Plaintiff,

v.

Peterson **ZAH**, Chairman of the Navajo
Tribal Council of the Navajo Indian
Tribe, for and on behalf of the Navajo
Indian Tribe, Defendant,

v.

Evelyn **JAMES**, et al., Intervenors.

No. CIV 74–842 PCT EHC.

United States District Court,
D. Arizona.

March 13, 1992.

---

James E. Scarboro, David C. Warren, Mary Gabrielle Sprague, Arnold & Porter, Denver, Colo., and Lawrence Hammond, W. Scott Bales, Meyer, Hendricks, Victor, Osborn & Maledon, Phoenix, Ariz., for plaintiff.

Terry E. Fenzl, Randolph H. Barnhouse, Brown & Bain, P.A., Phoenix, Ariz., for defendant.

K. Jerome Gottschalk, Robert M. Peregoy, Edgar T. Bristow, Native American Rights Fund, Boulder, Colo., and Philip Shea, Shea & Wilks, Phoenix, Ariz., for intervenors.

## ORDER

CARROLL, District Judge.

In order to enter Findings of Fact and Conclusions of Law, this Court must decide whether it has jurisdiction to adjudicate the rights of the San Juan Southern Paiute Tribe ("Paiutes") in the 1934 Reservation ("Reservation") and what remedy is available to the Paiutes.

In summary, the Paiutes claim that they fall within the jurisdictional provision of 25 U.S.C. § 640d–7(a), contending that they qualify as "any other tribe of Indians claiming any interest in or to the area described in the Act of June 14, 1934", and that this Court has authority to partition land to the Paiute Tribe under section 7(b). The Navajo Nation[1] argues in turn, that

---

1. The Navajo Tribal Code, 1 N.T.C. § 301, requires the use of the name "Navajo Nation" rather than "Navajo Tribe".

the Paiutes are not a "tribe" under section 7(a), and even if found to be a tribe, the Paiutes' remedy is restricted to the allotment provision of section 8.[2]

The issues of whether the Paiutes are "any other tribe" within section 7(a) and whether partition is an available remedy under section 7(b) are analytically distinct and will be addressed separately.[3]

1. *Does this Court have jurisdiction to determine the rights and interests of the Paiutes in the 1934 Reservation?*

This Court's jurisdiction is strictly limited to that authorized by Congress. *Sekaquaptewa v. MacDonald*, 591 F.2d 1289, 1292 n. 8 (9th Cir.1979). To determine what jurisdiction was authorized by Congress, this Court must first focus on the language of 25 U.S.C. § 640d–7 and 640d–8. Section 640d–7 states, in relevant part:

(a) Authorization to commence and defend actions in District Court. Either tribe, acting through the chairman of its tribal council for and on behalf of the tribe, is each hereby authorized to commence or defend in the District Court an action against the other tribe and any other tribe of Indians claiming any interest in or to the area described in the Act of June 14, 1934, except the reservation established by the Executive Order of December 16, 1882, for the purpose of determining the rights and interests of the tribes in and to such lands and quieting title thereto in the tribes.

(b) Allocation of land to respective reservations upon determination of interests. Lands, if any, in which the Navajo Tribe or Navajo individuals are determined by the District Court to have the exclusive interest shall continue to be a part of the Navajo Reservation. Lands, if any, in which the Hopi Tribe, including any Hopi village or clan thereof, or Hopi individuals are determined by the District Court to have the exclusive interest shall thereafter be a reservation for the Hopi Tribe. Any lands in which the Navajo and Hopi Tribes or Navajo or Hopi individuals are determined to a have a joint or undivided interest shall be partitioned by the District Court on the basis of fairness and equity and the area so partitioned shall be retained in the Navajo Reservation or added to the Hopi Reservation, respectively.

Section 640d–8 states:

Notwithstanding any other provision of this subchapter, the Secretary is authorized to allot in severalty to individual Paiute Indians, not now members of the Navajo Tribe, who are located within the area described in the Act of June 14, 1934 (48 Stat. 960), and who were located within such area, or are direct descendants of Paiute Indians who were located within such area, on the date of such Act, land in quantities as specified in section 331 of this title, and patents shall be issued to them for such lands having the legal effect and declaring that the United States holds such land in trust for the sole use and benefit of each allottee and, following his death, of his heirs according to the laws of the States of Arizona.

■ This Court has previously held that the BIA's recognition of the Paiutes as an Indian tribe will be upheld, and the language of section 7(a) therefore clearly encompasses the Paiutes as "an Indian tribe." The BIA's decision requires a finding that the Paiutes historically existed as a separate tribal entity, therefore the Paiutes existed as an Indian tribe in 1934 as well. 25 C.F.R. § 83.7.[4]

**2.** These arguments were previously urged in the Navajo Motion to Dismiss the Paiute Claims and the Paiute's motion to exclude the issue of allotments from trial, denied from the bench on September 28 and 29, 1989. However, this Court did not reach the merits of the motions at that time, and the arguments will now be addressed.

**3.** In the *Healing* case, the district panel held that while the statute did not confer jurisdiction to partition the 1882 Reservation, the Court did have jurisdiction to determine the rights of the parties in the land at issue. *Healing v. Jones*, 210 F.Supp. 125 (D.Ariz.1962), *aff'd*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963).

**4.** The Hopi Tribe had argued earlier in these proceedings that the term "such other Indians"

The Navajo Nation argues that Congress did not intend to include the Paiutes within the scope of section 7, regardless of whether they are determined to be a tribe. The Navajo Nation contends that section 7(b) does not authorize partition to the Paiutes as it refers only to the Navajo and Hopi Tribes, that the provision for allotments in section 8 bars this Court from providing any other remedy to the Paiutes, and that Congress retains exclusive authority to create a reservation pursuant to 25 U.S.C. § 211. However, all of the Navajo arguments go to the *remedy* available if the Paiutes are found to have an interest in the 1934 Reservation, not to whether this Court has jurisdiction to adjudicate the rights and interests of the Paiutes in the Reservation.[5]

Moreover, the Navajo Nation's argument that the remedies provided indicate Congressional intent that this Court not exercise jurisdiction over Paiute rights in the 1934 Reservation is unpersuasive: Congress provided that this Court had jurisdiction over *any tribe's* claim to rights in the Reservation, but explicitly included only the Navajo and Hopi Tribe in the provision granting the Court authority to partition. The Navajo argument renders the statutory language authorizing an action against "any other tribe of Indians" superfluous.

Further, neither the Navajo nor Hopi Tribe cites any evidence that Congress would have excluded the Paiute Tribe from this Court's jurisdiction to determine rights under section 7(a) if Congress had been aware of the existence of the Paiutes *as a tribe* at the time of the Settlement Act. At

the time of the Act, Congress believed that there were only a few Paiute Indians living on the 1934 Reservation. *See* H.R.Rep. No. 909, 93rd Cong.2d Sess 10 (1974) ("Sections 8 and 9 make allotments to a few Paiute Indians who were settled in the 1934 Reservation on the date of that Act and their descendents and confirms the remainder of the 1934 area in the Navajo"). It is not likely that Congress would have excluded the Paiute Tribe given that the legislation was intended to achieve "final settlement of all title claims." *Sekaquaptewa v. MacDonald,* 619 F.2d 801, 809 (9th Cir.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980).

■ Finally, Congress' adoption of a judicial settlement between the Navajo and Hopi Tribes, versus legislative allocation of land to the Hopi Tribe, indicates a clear intention to avoid governmental liability for a "taking" of tribal land.[6] Although a taking of Paiute tribal land was not discussed since Congress was not aware of the Paiute Tribe's existence, it is reasonable to assume that Congress would have had similar concerns with a taking of Paiute land. Statutes are interpreted to avoid takings absent explicit statements by Congress. *Menominee Tribe v. United States,* 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968). The exclusion of the Paiutes from a determination of the rights and interests in the 1934 Reservation may constitute a taking of Paiute land, though that issue is not before this Court.

The Paiutes also argue that the law of the case requires that this Court exercise jurisdiction to determine Paiute rights and

in the 1934 Act included only Hopi Indians. Although the District Court in *Sekaquaptewa v. MacDonald,* 448 F.Supp. 1183 (D.Ariz.1978), *aff'd in part and rev. in part,* 619 F.2d 801 (9th Cir.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980), did not reach the issue, the Court pointed out that Congress was capable of naming the Hopi Tribe in the statute if it had intended to limit the scope only to the Navajo and Hopi Tribes. *Sekaquaptewa,* 448 F.Supp. at 1193. The Hopi Tribe no longer asserts this argument.

5. The parties' arguments regarding available remedies will be discussed in the next section.

6. When the Settlement Act was first introduced, it provided that the Hopi Tribe would receive 243,000 acres of land in the Moencopi area. H.R.Rep. No. 909, 93rd Cong.2d Sess. 2 (1974); S.Rep. No. 1177, 93rd Cong.2d Sess. 4 (1974). A floor amendment was offered that authorized litigation between the tribes. 120 Cong.Rec. 37,-731 (1974). The debate centered around the concern of avoiding suits by the Navajo Nation for due process violations and the unconstitutional taking of its land without prior adjudication of its interests. *See id.* at 37,725, 37,728, 37,732, 37,734, and 37,740.

interests in the Reservation.[7] In a memorandum decision reversing Judge Copple's denial of the Paiutes' motion to intervene, the Ninth Circuit held that an evidentiary hearing on whether the Paiutes were a tribe was necessary before deciding whether this Court had jurisdiction pursuant to section 7(a). The Court stated:

> The Paiutes allege that they are a "tribe" and thus that they fall within the explicit grant of district court jurisdiction under 25 U.S.C. § 640d–7(a). When, as here, the question of jurisdiction is so intertwined with the merits of the action, it is inappropriate for the district court to find that there was no subject matter jurisdiction without holding an evidentiary hearing on that issue. [Citation omitted].

*Sidney v. Zah,* 725 F 2d 691 (9th Cir.1983).

The Navajo Nation argues that the doctrine of law of the case does not apply here because the Ninth Circuit did not address the merits of the issue, citing *Mirchandani v. United States,* 836 F.2d 1223, 1225 (9th Cir.1988) (the law of the case applies "only with respect to issues previously determined by the appellate court"). The Nation contends that the Ninth Circuit merely held that an evidentiary hearing was required to determine the Paiutes' tribal status.

■ Though conceding that the Ninth Circuit did not expressly hold that this Court had jurisdiction over the Paiutes under section 7(a) if the Paiutes were found to be a tribe, the Paiutes argue that the Ninth Circuit *necessarily* decided that issue; i.e. the Court had to reject the Navajo argument on appeal that there was no jurisdiction to determine Paiute rights regardless of whether they were a tribe due to the provision for Paiute allotments. In *Mirchandani,* the Ninth Circuit recognized that "district courts are not free to decide issues on remand that were previously decided either expressly or *by necessary implication* on appeal." *Id.* (emphasis added). *See also, Chapman v. National*

*Aeronautics and Space Admin.,* 736 F.2d 238, 241 (5th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984).

Judge Schroeder's dissent supports the interpretation that this issue was necessarily decided. She states in relevant part:

> I also agree with the district court that in enacting the 1974 Act Congress did not intend to give the district court jurisdiction to consider tribal claims of these Paiutes when it treated them not as a tribe but as individuals in 25 U.S.C. § 640d–8 (1975).

*Sidney v. Zah,* 725 F.2d 691 (1983). The Navajo Nation contends that it is not determinative that the dissent reached the merits if the majority opinion did not do so. *Beltran v. Myers,* 701 F.2d 91, 93 (9th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). While this is correct in the abstract, the majority in *Sidney v. Zah* did indeed reach the merits by necessary implication.

In summary, the language of section 7(a) includes the Paiutes since they are a "tribe", there is no evidence in the legislative history that the Paiutes would not have been included under section 7(a) if Congress had been aware of the Paiute Tribe's existence, and the previous Ninth Circuit memorandum decision necessarily decided that if the Paiutes are found to be a tribe, they would fall within this Court's jurisdiction under section 7(a). This Court will thus exercise jurisdiction to determine the rights of the Paiute Tribe in the 1934 Reservation, and to quiet title thereto.

2. *Does this Court have jurisdiction to partition land to the Paiute Tribe?*

Whether this Court has jurisdiction to partition land to the Paiute Tribe is governed by 25 U.S.C. § 640d–7(b):

> Lands, if any, in which the Navajo Tribe or Navajo individuals are determined by the District Court to have the exclusive interest shall continue to be a part of the Navajo Reservation. Lands, if any, in which the Hopi Tribe, including any Hopi

---

**7.** The Paiutes also argue that the Ninth Circuit decision necessarily determined that allotments were not the sole remedy available to the Paiute

Tribe. The Ninth Circuit decision's effect on remedies will be discussed in the next section.

village or clan thereof, or Hopi individuals are determined by the District Court to have the exclusive interest shall thereafter be a reservation for the Hopi Tribe. Any lands in which the Navajo and Hopi Tribes or Navajo or Hopi individuals are determined to have a joint or undivided interest shall be partitioned by the District Court on the basis of fairness and equity and the area so partitioned shall be retained in the Navajo Reservation or added to the Hopi Reservation, respectively.

On its face, section 7(b) does not include the Paiute Tribe, or "any other tribe of Indians" in its grant of jurisdiction to this Court to add areas of exclusive interest to the respective reservations or to partition areas of joint interest.

 The Paiutes urge this Court to nonetheless include the Paiute Tribe in the partition. First, they argue that the Ninth Circuit's memorandum decision necessarily held that the allotment provision was not the sole remedy available to the Paiute Tribe. *Sidney v. Zah*, 725 F.2d 691 (1983). While the Ninth Circuit necessarily found that if the Paiutes were a tribe, this Court was to exercise jurisdiction over the rights of the Paiutes pursuant to section 7(a), the decision does not require that the Paiutes be included in the partition remedy provided by section 7(b). In the *Healing* case, the district court held that even though the statute did not confer jurisdiction to partition the 1882 Reservation, the Court had jurisdiction to determine the rights of the parties in the land at issue. *Healing v. Jones*, 210 F.Supp. 125 (D.Ariz.1962), *aff'd*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). Thus, it is possible for this Court to hold that it has jurisdiction to determine the Paiutes' rights in the Reservation, but that it does not have jurisdiction to partition land to the Paiute Tribe.

Next, the Paiute Tribe argues that the authority to partition land to the Paiute Tribe is provided in the statute by implica-

tion. The Paiute Tribe cites the purpose of the statute to achieve "final settlement of all title claims," *Sekaquaptewa v. MacDonald*, 619 F.2d at 809, and argues that a court must fashion a remedy to effectuate the statutory purpose. *J.I. Case v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964). However, there are alternatives to partition to settle all title claims, including the payment of money damages to the Paiute Tribe for lands in which the Paiute Tribe is found to have an interest, and this Court will not find that Congress impliedly authorized partition to the Paiute Tribe.

The Paiutes also contend that that "the power of a court to afford a remedy must be coextensive with its jurisdiction over the subject matter," citing *Hamilton v. Nakai*, 453 F.2d 152, 156 (9th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972), and that since this Court has jurisdiction to determine the rights of the Paiute Tribe in the Reservation, it must have jurisdiction to partition those lands to the Paiute Tribe. However, the *Hamilton* case is not determinative in this circumstance: there, the Ninth Circuit granted the Hopi Tribe's request for an order of compliance or writ of assistance to enforce its rights as a co-tenant to the 1882 Reservation. In this case, the Paiute Tribe is not simply requesting that this Court enforce a judgment of the Paiute Tribe's interest in the 1934 Reservation, it is requesting that this Court partition that land to the Paiute Tribe. The *Hamilton* court recognized this distinction: "This proceeding does not seek a judgment; it seeks enforcement of a judgment already entered." *Id.* at 161.

In response, the Navajo Nation argues that it would be unfair for this Court to interpret the statute so as to allow the Paiutes to gain land through partition *and* allotment.[8] Although this Court is not deciding whether or not this would indeed be unfair, the Navajo Nation is correct that

---

**8.** The Navajo Nation thus asks this Court to hold that the Paiute Indians are precluded from requesting allotments if the Paiute Tribe is included in the partition. However, there is no indication that the Secretary of the Interior would

grant allotments from lands in which the Paiute Tribe did not have an interest. Further, the propriety of the allotments is not before this Court, and jurisdiction to award allotments is in the Secretary of Interior.

the provision for allotments is evidence that Congress did not intend to include the Paiute Tribe in the partition.

Further, the Navajo Nation argues that Congress provided an express remedy to the Paiutes through the allotment provision, which thus precludes judicial creation of a different remedy. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646, *reh. denied,* 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974) ("where legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies"); *Oglala Sioux Tribe v. United States,* 650 F.2d 140 (8th Cir.1981) (express remedy by Congress "serves as a bar to the district court affording the Tribe any other form of relief"), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). The allotment provision is an express remedy which precludes this Court from providing an additional remedy to the Paiute Tribe absent explicit consent by Congress.

This conclusion is supported by the legislative history of the Settlement Act. As previously discussed, the intial version of the Settlement Act provided for a fixed amount of land to be awarded to the Hopi Tribe. H.R.Rep. No. 909, 93rd Cong.2d Sess. 2 (1974); S.Rep. No. 1177, 93rd Cong.2d Sess. 4 (1974). Although an amendment was adopted that authorized litigation between the Navajo and Hopi tribes, the final version of the Act continued to provide a non-judicial method of awarding land to the Paiutes.

■ Finally, the Navajo Nation argues that a partition of land to the Paiute Tribe is the creation of a reservation, which is within the exclusive authority of Congress.

No Indian reservation shall be created, nor shall any additions be made to one heretofore created, within the limits of the States of New Mexico and Arizona, except by Act of Congress.

25 U.S.C. § 211, Ch. 86, § 2, 40 Stat. 570 (1918).

Changes in the boundaries of reservations created by Executive order, procla-mation, or otherwise for the use and occupation of Indians shall not be made except by Act of Congress.

25 U.S.C. § 398d, Ch. 299, § 4, 44 Stat. 1347 (1927). *Healing v. Jones,* 210 F.Supp. at 179–181 (the administrative creation of exclusive Navajo areas in the 1882 Reservation was prohibited by §§ 211 and 398d).

The Paiute Tribe argues that the above statutes do not apply in this situation. As the legislative history indicates that the statutes were intended to ensure that no further public land was taken by the executive branch from Arizona and New Mexico, the Paiute Tribe argues that the clarification of boundaries between tribes in which no new public lands are taken do not implicate the statutes. However, this argument has previously been rejected. *Healing,* 210 F.Supp. at 180 n. 79 ("Defendant's statement ... that the 1918 Act 'has no application to existing reservations, either those created by Statute or by Executive Order' is in error").

In summary, the language of section 7(b) does not include the Paiute Tribe in its grant of jurisdiction to this Court to add areas of exclusive interest to the respective reservations or to partition areas of joint interest; the authority to partition land to the Paiute Tribe is not provided by implication; Congress provided an express remedy to the Paiutes through the allotment provision, which thus precludes judicial creation of a different remedy; and a partition of land to the Paiute Tribe would have the effect of creation of a reservation, which is within the exclusive authority of Congress. This Court finds that it therefore does not have jurisdiction to include the Paiute Tribe in the partition following the determination of the rights and interests of the tribes in the 1934 Reservation. It is up to Congress to determine whether the San Juan Southern Paiute Tribe is entitled to a partition of land.

Accordingly,

IT IS ORDERED that this Court has jurisdiction to determine the rights and interests of the Paiute Tribe in the 1934 Reservation.

IT IS FURTHER ORDERED that this Court lacks jurisdiction to partition land to the Paiute Tribe following the determination of the rights and interests in the 1934 Reservation.